IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KELLY BLAND, on behalf of herself and others similarly situated, | : <br> : CIVIL ACTION FILE NO. <br> : |
| Plaintiff, | : **1:25-cv-14183** <br> : |
| v. | : **FIRST AMENDED** <br> : **COMPLAINT – CLASS ACTION** |
| HEALTHCARE SOLUTIONS TEAM, LLC D/B/A ALLSTATE HEALTH SOLUTIONS | : <br> : <br> : **JURY TRIAL DEMANDED** |
| AND | : |
| SANDRA JOHNSON | |
| Defendants | |

Plaintiff Kelly Bland (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the National Do-Not-Call Registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call Registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Healthcare Solutions Team, LLC d/b/a Allstate Health Solutions ("Allstate" or "Defendant"), through its licensed agent, Sandra Johnson, violated the TCPA by sending multiple telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent as well as sending such calls to people who had previously asked to no longer receive them.

## PARTIES

4. Plaintiff Kelly Bland is an individual residing in Texas.

5. Defendant Healthcare Solutions Team, LLC d/b/a Allstate Health Solutions ("Allstate") is a corporation that is registered to do business in the State of Illinois.

6. Defendant Sandra Johnson is an individual who is appointed to write life and health insurance policies for Defendant Allstate and is an Allstate agent who resides in Florida.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8. This Court has general personal jurisdiction over Defendant Allstate because it is headquartered and has its principal place of business in this District. This court has specific personal jurisdiction over Johnson because she is an Allstate agent and contracted with Allstate in a contract that, among other things, had an Illinois choice of law and forum provision and conducted the illegal telemarketing at issue on behalf of Allstate, an Illinois corporation.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the calls were orchestrated and designed to obtain business for a company located in this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

## BACKGROUND

**A.    The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

10. The TCPA prohibits sending multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that sends those solicitations, or "on whose behalf" such solicitations are sent. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.     The TCPA requires entities to have sufficient policies in place to prevent unwanted calls before making telemarketing calls.**

14. The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

16. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. I*n the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

17. These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

18. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the

4

existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

19. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

## FACTUAL ALLEGATIONS

20. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21. Plaintiff's telephone number, (817) XXX-XXXX, is a non-commercial telephone number that is used for residential purposes.

22. Plaintiff Bland uses the telephone number for her own personal, residential, and household needs and reasons.

23. Plaintiff Bland does not use the number for business reasons or business use.

24. The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

25. Plaintiff Bland's number has been on the National Do Not Call Registry for years since she registered it on the Registry prior to receiving the calls at issue.

26. Despite that, Plaintiff received at least 5 calls from Defendants in June 2024.

27. On June 7, 2024, Plaintiff received a call from (352) 657-3584.

28. The caller informed Plaintiff that she was "eligible for state affordable care act at no cost."

29. Plaintiff stated she was not interested and requested the Defendants stop calling.

30. On June 10, 2024, Plaintiff received a call from (914) 786-7030.

31. The caller stated, "the purpose of the call is to let you know that the government is giving affordable healthcare to the people at zero cost."

32. Plaintiff stated she was not interested and to stop calling.

33. Defendants, however, continued to call.

34. Later that day, Defendants called Plaintiff two more times and during both calls offered Plaintiff purportedly "free" health insurance using practically identical scripts.

35. During both calls Plaintiff again stated she was not interested and to stop calling.

36. Despite these numerous requests, Defendants again called Plaintiff on June 24, 2024 from (507) 792-1842.

37. Upon information and belief, all the aforementioned caller IDs are "spoofed."

38. During this call, which began with a nearly identical script, Plaintiff spoke to Johnson's sales agent, "Victoria," who tried to sell her on a health insurance policy, which was revealed to be an Allstate Health Solutions policy.

39. Although the callers initially claimed that the purported healthcare plan was available at "no cost," that was a lie and merely a sales tactic to get the "foot in the door" and get call recipients interested, at which point they would be sold Allstate's for-profit and costly plans.

40. "Victoria" attempted to send the Plaintiff an email with pricing for an Allstate insurance plan but was unable to and so hung up the call so that she could check with her "manager to see" if she could "troubleshoot this error that I'm having." This occurred at approximately noon.

41. Upon information and belief, this "manager" was Defendant Johnson, the actual agent licensed to sell the subject Allstate policy.

6

42. Upon information and belief, Defendant Johnson hired salesperson callers, like "Victoria," and the other individuals in the previous calls, to screen callers, take down their information, and only quote and sell insurance policies to the interested ones.

43. Upon information and belief, and based on the common indicia of the calls, shared scripting, and use of "spoofed" caller IDs, the calls apparently all originated from the same place, salespersons of Defendant Johnson, whom Johnson hired to sell insurance on her behalf.

44. For the avoidance of doubt, based on the other misrepresentations during the call, including the false representation that the calls were for "no cost" or "free" health insurance, which were lies, any implications to the contrary, including that the individuals with whom Plaintiff spoke, were calling from the "state government" or the "state affordable care act" marketplace, were also misrepresentations.

45. Plaintiff's counsel has searched public records for Defendant Johnson to ascertain if she is a government employee or employed by the government and was able to locate no evidence for this possibility. In fact, Johnson's only insurance license appointments for "Life & Health" insurance are Defendant Allstate's subsidiary insurance companies:

| LIFE & HEALTH (0218) | | |
|---|---|---|
| Company Name | Issue Date | Exp Date |
| NATIONAL HEALTH INSURANCE COMPANY | 5/23/2024 | 8/31/2026 |
| INTEGON INDEMNITY CORPORATION | 5/23/2024 | 8/31/2026 |

46. Indeed, upon information and belief, Allstate's plans are offered through various states' affordable care act marketplaces, including Texas'. But just because they are so offered does *not* mean that the callers are calling from *the* marketplace *itself*. The state health insurance marketplaces themselves, in fact, do not make such calls; individual insurance agents, like Johnson, who sell commercial company policies, like Allstate's, do.

47. In fact, during the call, "Victoria" stated that there would be a monthly premium for the Allstate plan and wanted to know if the Plaintiff was okay with the pricing before attempting to enroll Plaintiff. And, in fact, the Plaintiff was charged a $405.29 policy premium on her credit card, *directly* from Defendant Allstate on June 24, the same day, after completing the email she received less than an hour later, referenced below:



48. As such, the calls were plainly made to encourage the Plaintiff to purchase Defendant Allstate's costly insurance services, which are also sold through state healthcare marketplaces, under the false premise and guise that it was available at "no cost," which was an outright lie, just to get people interested.

49. Immediately prior to this charge, Plaintiff received an email from Defendant Allstate with a link to get a "PIN code" in order to complete the enrollment process.

8

50. That email clearly indicated that the agent writing the policy was Defendant Johnson, provided her telephone number 954-275-0063, the same telephone number listed on her insurance license, and directed Plaintiff to contact Defendant Johnson with any questions.

51. The email and a screenshot of the PIN code page accessed by the link are provided below:



52. Defendant Allstate's conduct is even more egregious because these are not the Plaintiff's first issues with illegal calls from Allstate, including Allstate Health Solutions.

9

53. In fact, the Plaintiff had previously received illegal telemarketing calls from Allstate, and asked Allstate to place the same (817) XXX-XXXX number on its internal Do Not Call list. Allstate confirmed "that (817) XXX-XXXX is on the Allstate specific do not call list" as far back as May 26, 2021, but it evidently did not.

54. Defendant Allstate ratified Johnson's conduct by accepting the lead and referral generated as a result of Johnson's illegal telemarketing conduct and authorizing Johnson to continue contacting the Plaintiff, including through the pendency of this lawsuit.

55. Indeed, *to this day*, and despite the filing of the original, non-amended Complaint in this matter, Allstate has not yet terminated or disciplined Johnson in any way.

56. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

57. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

58. The FCC has instructed that sellers such as Allstate may not avoid liability by outsourcing telemarketing to agents, such as Johnson:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

59. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

60. Allstate is liable for telemarketing calls placed by Johnson and which were ultimately placed with the purpose and aim of and using Allstate's name to generate customers for Allstate, including the Plaintiff.

61. Indeed, Allstate's DBA, Allstate Health Solutions, was prominently featured as the company actually selling the insurance policy in the emails Plaintiff received.

62. Allstate uses agents who it authorizes to make phone calls to potential customers, vet potential clients, and educate them about and sell them Allstate insurance services.

63. Allstate controlled the day-to-day activities of Johnson by allowing her to work up the customer service aspects and sales on its behalf and then focus on its core business, that of selling insurance.

64. Indeed, it also authorized Johnson to hire middlemen, like "Victoria" and the other individuals with whom Plaintiff spoke, to place illegal, and misleading, calls through which Allstate's insurance products would ultimately be promoted, including with the false script that the insurance policies were being offered at "zero cost."

65. Allstate authorized Johnson to use Allstate's brand name on its emails and other sales communications, the emails came directly from Allstate, and further authorized Johnson to work up the sales and customer service aspects of its insurance services on its behalf.

11

66. Allstate also could have prohibited Johnson from using generating leads to numbers on its internal Do Not Call list, let alone calls placed to numbers on the Do Not Call Registry.

67. It did not.

68. Finally, Allstate could have terminated Johnson once it learned of Johnson's illegal marketing conduct.

69. It did not. In fact, as described above, *to this day*, and despite the filing of the original, non-amended Complaint in this matter, Allstate has not yet terminated or disciplined Johnson in any way.

70. A reasonable seller would investigate why its agents were using illegal outbound telemarketing calls to sell its products to numbers which should have been on both its internal Do Not Call lists and the National Do Not Call list.

71. A reasonable seller would also investigate as to why its agents and sales representatives hired by those agents are falsely claiming that Allstate is offering purportedly "no cost" health insurance that actually winds up being a $405.29 monthly policy.

72. Moreover, a reasonable seller would also investigate into the reasons why their agent and the sales representatives hired by those agents would be calling numbers to numbers on the Do Not Call Registry.

73. It did not.

74. Allstate hired Johnson without a proper investigation and did not terminate her when it was informed of Johnson's illegal calling conduct.

75. As such, Allstate knowingly ratified Johnson's conduct.

76. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

77. Defendant Johnson personally participated in the fruits of at least one of the calls complained of herein, by personally sending an email in an attempt to sell Allstate's products and services.

78. Defendant Johnson may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

79. Johnson personally committed the TCPA-violative conduct at issue because she was the individual who personally wrote the policy sold by her sales agents on the calls and was the licensed insurance agent under whose name the services sold would ultimately be bound.

80. The foregoing facts demonstrate that Johnson had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

81. Plaintiff never consented to receive calls from Defendants.

82. In fact, as described above, the Plaintiff explicitly revoked any purported consent to receive calls from Defendant Allstate.

83. The calls were all placed to sell Defendant Allstate's goods and services.

84. Plaintiff's privacy has been violated by the above-described telemarketing calls.

85. The Plaintiff never provided her consent or requested the calls.

86. The aforementioned calls to the Plaintiff were unwanted.

87. The calls were non-consensual encounters.

88. Defendant Allstate had the ability to immediately honor Plaintiff's do not call requests and communicate those to its agents, but they did not.

89. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

90. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

91. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

92. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.
>
> **Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month

period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

93. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes.

94. Excluded from the Classes are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

95. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that cluttered legitimate communications.

96. This Class Action Complaint seeks injunctive relief and money damages.

97. The Classes, as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

98. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds as the calls were sent in a generic fashion and based on the sheer volume of calls she received.

99. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

100. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

101. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

102. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

    a. Whether Defendants sent multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

    b. whether Defendants recorded or honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

    c. Whether Defendants' conduct constitutes a violation of the TCPA; and

    d. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

103. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes because the Plaintiff has no interests which are antagonistic to any member of the Classes.

104. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

105. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

106. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

### FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

107. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

108. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

109. Defendants' violations were negligent, willful, or knowing.

110. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

111. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from sending telemarketing calls, including calls, to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d) on behalf of Plaintiff and the Internal Do Not Call Registry Class)**

112. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

113. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

114. Defendants' violations were negligent, willful, or knowing.

115. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendants from sending calls or calls soliciting the purchase of their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D. Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: January 27, 2026

PLAINTIFF, on behalf of herself
and others similarly situated,

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

January 27, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

19