**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| KELLY BLAND, on behalf of herself and others similarly situated, | : | CIVIL ACTION FILE NO. |
| | : | |
| Plaintiff, | : | **1:25-cv-14183** |
| | : | |
| v. | : | **PLAINTIFF'S RESPONSE IN** |
| | : | **OPPOSITION** |
| HEALTHCARE SOLUTIONS TEAM, LLC | : | **TO DEFENDANT HEALTHCARE** |
| D/B/A ALLSTATE HEALTH SOLUTIONS | : | **SOLUTIONS TEAM, LLC'S** |
| | : | **MOTION TO DISMISS** |
| AND | : | |
| | | |
| SANDRA JOHNSON | | **JURY TRIAL DEMANDED** |
| | | |
| Defendants | | |

/

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT HEALTHCARE SOLUTIONS TEAM, LLC'S**
**MOTION TO DISMISS**

## I. INTRODUCTION

Defendant Healthcare Solutions Team, LLC ("Defendant") asks this Court to treat a paid insurance sales campaign as if it were a benign public service announcement made to an existing client. The First Amended Complaint says otherwise. True, Plaintiff alleges that, over a series of calls, the callers told her she was eligible for "state affordable care act at no cost," that "the government is giving affordable healthcare to the people at zero cost," and that she could obtain "free" health insurance. But the same pleading goes on to allege what those calls were really designed to accomplish. On June 24, 2024, Plaintiff was connected to "Victoria," who attempted to sell her Defendant's insurance policy, sent her into the enrolment process, and caused a $405.29 policy premium to be charged to Plaintiff's credit card that same day after she completed the emailed enrolment link. That is a sales pitch for insurance.

This lawsuit is the predictable consequence of that conduct.

Defendant now moves to dismiss on two theories. First, deploying the Seventh Circuit's recent decision in *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025), it claims the calls were merely "informational." Second, it says Plaintiff's allegation that the promise of "free" insurance was a pretext to sell a paid policy somehow transforms this TCPA case into a fraud case subject to Rule 9(b).

Neither argument has merit. The motion should be denied in its entirely.

## II. FACTUAL BACKGROUND

Plaintiff alleges that, between at least June 7, 2024 and June 24, 2024, she received at least five calls from various numbers selling health insurance. The June 7 caller, for example, told Plaintiff that she was "eligible for state affordable care act at no cost." On June 10, another caller stated that "the purpose of the call is to let you know that the government is giving affordable healthcare to the people at zero cost." Later that same day, Defendants called Plaintiff

twice more and offered purportedly "free" health insurance using practically identical scripts. Each time, Plaintiff said she was not interested and asked that the calls stop.

Despite those repeated stop requests, Defendants called again on June 24, 2024. During that call, Plaintiff spoke with "Victoria," who tried to sell her an Allstate Health Solutions policy. The Amended Complaint further alleges that the callers' earlier references to "no cost" or "free" health insurance were false and were used as a sales tactic to get call recipients interested before steering them toward Defendant's costly private health insurance plans. "Victoria" attempted to send Plaintiff pricing for an Allstate plan, then sent Plaintiff an email with a link to obtain a PIN code and complete enrolment. Plaintiff alleges that, less than an hour later, Defendant Allstate charged a $405.29 policy premium to her credit card.

### III.    LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Rules demand only a "short and plain statement" of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests, not detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

In determining whether a claim is plausible, the court must "draw on its experience and common sense." *Id.* at 678. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that

3

there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV. ARGUMENT

### A. The calls Plaintiff received were "telephone solicitations" because they encouraged her to purchase the Defendant's insurance services.

Defendant's lead argument fails because it asks the Court to ignore the complaint's core factual allegations. Defendant isolates the opening script, which references purportedly "free" health insurance, from the rest of the calls and insists that those words alone make the campaign "informational" as a matter of law. But whether a call is a "telephone solicitation" under the TCPA depends on the purpose of the call, which is a fact-intensive inquiry that involves a measure of common sense. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). If Defendant's standard were the law, then any telemarketer could simply sidestep the TCPA by claiming that it was simply calling persons to "inform" them about purportedly "free" goods and services at the outset that they would be sold later on the call. That would lead to absurd results.

The Amended Complaint makes clear the purpose of the calls in detail. It alleges that the calls were designed to get Plaintiff on the line, draw her in with the promise of "free" insurance coverage, and then sell her a private insurance policy that in fact cost $405.29 per month. Defendant cannot seriously claim with a straight face that these text message calls were not sent to solicit recipients to purchase *paid* insurance services that were initially represented as "free."

Defendant cannot credibly try to recast text messages that encourage recipients to purchase health insurance as purely "informational" and educational calls. That framing is too clever by half. If Defendant were to be believed, late night infomercials "informing" potential consumers about carpet dirt and how it can be prevented with a particular model vacuum cleaner fit in the same category as *Mr. Rogers' Neighborhood.* After all, on Defendant's account, neither

4

program encourages the viewer to "purchase or invest in" any "property, goods, or services." 47 U.S.C. § 227(a)(4). That characterization is absurd.

The calls encouraged Plaintiff to provide her information and receive an Allstate health insurance quote, which was then emailed to Plaintiff and attempted to be charged for $405.29. That is not free. That is precisely four Benajmin Franklins, five Abraham Lincolns, and a George Washington removed from "free." Defendant's website and email also extoll the benefits of its health insurance services. Defendant does not provide health insurance for free or out of the goodness of its heart; it charges for them. The calls clearly encouraged the Plaintiff, therefore, to purchase the Defendant's services.

Though the definition of a "telephone solicitation" requires the "purchase" or "investment" in "property, goods or services," courts across the country have held that messages encouraging a person to engage with an entity, even one offering "free" services, qualify. *Chesbro*, 705 F.3d at 918 (call encouraging redemption of free reward points at a store was telemarketing); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 209 (S.D.N.Y. 2024) ("[T]he challenged calls allegedly sought to encourage *Plaintiff* to contract with Defendant and to direct a portion of a future right to payment to Defendant. While those funds would originate from a third party, the calls urged the relevant decisionmaker- namely, Plaintiff-to allocate those funds."); *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 283 (S.D.N.Y. 2013) ("the fact that the recipient of the fax is not the one paying for the product does not make the proposed transaction non-commercial"); *Rockwell v. Medicus Healthcare Sols., LLC*, No. 24-CV-128-LJV, 2025 WL 959745, at *4 (W.D.N.Y. Mar. 31, 2025) ("[S]ervices that appear to be free or to offer recruitment opportunities may 'serve as a mere pretext for commercial services.'") (quoting *Suescum v. Fam. First Life, LLC*, No. 6:21-CV-1769-WWB-EJK, 2023 WL

5

311144, at *2 (M.D. Fla. Jan. 19, 2023) (quoting *Neurocare Inst. of Cent. Fla., P.A. v. Healthtap, Inc.*, 8 F. Supp. 3d 1362, 1367 (M.D. Fla. 2014) (quoting *In re Rules*, 21 F.C.C.R. 3787, 3814 (Apr. 6, 2006)))). As *Suescum* explains, "Plaintiffs allege that Defendant's text messages prompted them to view a website encouraging them to purchase warm leads. As a result, the instant case is distinguishable from the cases cited by Defendant because Plaintiff has sufficiently alleged that Defendant's *unsolicited texts served as a pretext to commercial activity*—the sale of leads to insurance agents." *Suescum*, 2023 WL 311144, at *3.

Even under *Hulce*, the Plaintiff's allegations are enough. Hulce explained that, "read in context, the natural reading of 'encourage' means 'to persuade' or 'urge' someone to pay for a service." *Hulce*, 132 F.4th at 498-99. The plaintiff in *Hulce* lost only *after summary judgment* because the record showed the defendant was offering genuinely free nutritional services already available through his Medicaid-funded healthcare plan, which also included gift card incentives paid to *plaintiff* for participating. *Id.* at 496-97. The Seventh Circuit's holding turned on a record establishing that the plaintiff was never urged to pay for or purchase anything, unlike here. Defendant cannot extend *Hulce*'s holding to create a magical safe habour under which a telemarketer may immunize its calls merely by beginning its sales pitch by claiming it is "free."

This case is the opposite of *Hulce*. Unlike there, where following through with the calls would have resulted in the plaintiff getting *paid*, here, Plaintiff was asked to pay Defendants. Plaintiff alleges that the calls here ended not in a free benefit already included in an existing plan, but rather in an attempted sale of a private Allstate policy and an actual $405.29 premium charge. If the Court accepts those allegations as true, as it must at this stage, then the "free" language was not anything being promoted or sold at all. Rather, it was bait. The Plaintiff's pleading makes clear that the sale of a paid insurance policy was the true object of the campaign.

6

The same distinction defeats Defendant's reliance on *Trujillo*, *Morris*, and *Edwards*, which each were decided at summary judgment. In *Trujillo*, the calls were made to inform recipients that the defendant was offering *free* weatherization services to low-income homeowners. In *Morris*, like *Hulce*, the communication concerned in-home medical examinations available for free to existing members as part of their their health plan. The same is true of the offered services in *Edwards*. Whatever else those cases show, they do not hold that a caller may dangle the word "free" as a pretext for selling a paid product and still escape the TCPA.

Recent authority confirms the difference. In *Newell v. Children's Dental Health Assocs., LLC*, the court rejected the argument, which cited *Hulce* extensively, that texts sent to encourage the recipient to schedule an overdue dental appointment were not telephone solicitations simply because the defendant characterized them as "informational." No. 25-5238, 2026 WL 927378, at *8-*9 (E.D. Pa. Apr. 6, 2026). Distinguishing *Hulce*, the court explained that, where nothing in the record indicated that the promoted services would be free of charge, it was plausible at the pleading stage that the messages were intended to persuade the plaintiff to pay for the defendant's services. *Id.* That logic applies with even greater force here, where the complaint does not merely imply an eventual request for payment, but rather alleges that the call culminated in one and ties it to a specific premium charge.

Defendant cannot credibly try to recast these calls as purely informational, as required under *Hulce*. What Defendants did is no different than a landscaper knocking on a homeowner's door to point out that a tree limb is about to fall on the roof, while standing ready, for a price, to solve the problem. The implication is obvious. Here, too, the implication is obvious. The callers used claims of "free" healthcare to encourage the creation of a a new commercial relationship

and sell Defendants' insurance products. That is a "telephone solicitation" under the TCPA, or at the very least it is more than plausibly alleged to be one. To the extent it disputes these factual assertions, a Rule 12(b)(6) motion is the inappropriate place to do so. The Plaintiff has plausibly alleged the calls were plainly telephone solicitations subject to the TCPA.

**B. Plaintiff's allegations that the promises of "free" health insurance were pretextual do not transform the pleadings into one of fraud, and thus do not trigger Rule 9(b).**

Defendant's second argument simply mischaracterizes the complaint. Plaintiff is not pleading fraud. She is pleading a TCPA claim. The fact that the Amended Complaint alleges the promise of "free" insurance was false and pretextual does not change the nature of the TCPA cause of action, which is subject to the pleading standard of Rule 8, not Rule 9. Plaintiff's claims that these promises of "free" health insurance were false simply bear on whether they were "telephone solicitations" or not, and answering that question in the affirmative does not require a holding that conduct rising to the level of fraud occurred.

Plaintiff's allegations that the promise of "free" healthcare was false matter only because they illuminate the *true* purpose of the calls, the precise question the TCPA asks when it defines a "telephone solicitation" as a call made for the purpose of encouraging a purchase. But demonstrating that the calls were "telephone solicitations" does not require a finding that the pretexts on the calls were fraudulent, only that they were pretexts to activity that constitutes a "telephone solicitation." When a claim "sounds in fraud," in other words, one that is premised upon a course of fraudulent conduct, it implicates Rule 9(b)'s heightened pleading requirements. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). The "telephone solicitation" question does not sound in fraud because it is not premised on a course of fraudulent conduct, nor can it be, because fraud is not a part of the statutory definition of that term.

8

Put differently, Plaintiff's claims do not require proof that any Defendant committed common law fraud, statutory fraud, or any other theory of fraud. It requires proof that Defendants made calls for "telemarketing" purposes, that is, the purpose of encouraging the purchase of goods or services. The allegation that those goods or services were not "free" and were instead a pretext is one factual reason why the Court can plausibly infer that purpose.

*Children's Dental* is again instructive. There, the Court denied defendant's motion to dismiss based partially on the argument that the subject calls were pretextual calls designed to schedule an appointment for dental work, and thus encouraged the purchase of dental services. 2026 WL 927378, at *9. Instead, the court treated the issue for what it was, a factual dispute about the true purpose of the messages, and one not suited for resolution at the pleading stage. The same approach is appropriate here.

Nor should Defendant's argument that the government sometimes subsidizes health insurance plans to qualifying individuals hold any weight, either. At the end of the day, the plaintiff was induced to purchase a commercial health insurance plan, and no part of the "telephone solicitation" analysis turns on who the ultimate person paying for those services is. As the Court explained in *Cacho*, 739 F. Supp. 3d at 209-10:

> But those courts were not skeptical of the plaintiffs' claims because a third party would pay for the service. Rather, they focused on the fact that in those cases, the calls urged plaintiffs to use free services without encouraging plaintiff or any third party to purchase them. . . . [T]hese cases differ fundamentally from the facts here: the challenged calls allegedly sought to encourage *Plaintiff* to contract with Defendant and to direct a portion of a future right to payment to Defendant. While those funds would originate from a third party, the calls urged the relevant decisionmaker—namely, Plaintiff—to allocate those funds. Thus, deeming the calls here to be telephone solicitations or telemarketing would not improperly "separat[e] the encouragement element from the purchasing element."

Thus, even if the promise of "free" health insurance was some vague and undefined reference to government-subsidized health insurance plans (which is itself an inquiry not suited

9

for resolution at the pleadings stage), the calls would *still* be solicitations because they would encourage the Plaintiff, the relevant decisionmaker, to have the government direct payment and allocate her subsidized funds to *Allstate*, as opposed to another insurer, for any (allegedly) subsidized plan.

At bottom, all this shows is that Defendant's Rule 9(b) argument is just a repackaged merits argument. Defendant says Plaintiff has not proved that no free plan existed or that she was definitively ineligible for any subsidized coverage. As *Cacho* counsels, the ultimate third party making the payment is irrelevant, because even under such a scheme, Allstate is seeking to encourage the decisionmaker, the Plaintiff, to allocate the government funds to Allstate, as opposed to any other insurer. But even so, the Court need not make that determination at this stage. Plaintiff alleges that the callers represented the coverage as "free" but instead sold her a private Allstate policy for $405.29 a month. Those facts plausibly support the inference that the "free" promise was used as a sales tactic to get Plaintiff interested and onto the path toward purchasing Defendant's paid product. That is enough.

And even if Rule 9(b) did apply (which it does not, for the reasons stated above), the Amended Complaint satisfies it. Plaintiff pleads with particularity the who, what, when, where, and how of the alleged pretext. She identifies the dates of the calls, the caller IDs, the scripts used, the details of the conversation with "Victoria" in which Allstate's health insurance was promoted, Johnson's role as the licensed agent, the email with the PIN code enrollment link, and the resulting $405.29 premium charge. Those are concrete factual allegations that suffice even under Rule 9(b)'s heightened pleading standard. Dismissal under Rule 9(b) is therefore unwarranted for the independent reason that the complaint is already particularized.

10

### V.      Conclusion

The First Amended Complaint plausibly alleges that the calls at issue were telephone solicitations designed to sell Plaintiff a paid health insurance policy. Defendant cannot attempt to recast these plain solicitations as informational calls. *Hulce* and each of the other cases on which Defendant relies were all resolved on summary judgment and all involved free services to which the respective recipients were all already entitled and did not seek to persuade them to choose such services in their positions as the relevant decisionmakers. Nor does the Plaintiff's pleading implicate Rule 9(b) since she does not plead fraud. And even if Rule 9(b) was implicated, the Plaintiff's allegations meet that standard. For all of these reasons, Defendant's Motion to Dismiss should be denied in its entirety.

Dated: April 16, 2026                    PLAINTIFF, on behalf of herself
                                                        and others similarly situated,

                                                    */s/ Andrew Roman Perrong*
                                                    Andrew Roman Perrong, Esq.
                                                    Perrong Law LLC
                                                    2657 Mount Carmel Avenue
                                                    Glenside, Pennsylvania 19038
                                                    Phone: 215-225-5529 (CALL-LAW)
                                                    Facsimile: 888-329-0305
                                                    a@perronglaw.com

11

12

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

April 16, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com