**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| KELLY BLAND, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAS HEALTH CARE/RX PLAN AGENCY, INC. D/B/A ALLSTATE HEALTH SOLUTIONS<br><br>AND<br><br>SANDRA JOHNSON,<br><br>Defendants. | : | Case No. 25-cv-14183<br><br>Hon. Martha Pacold |

**DEFENDANT AMERICAS HEALTH CARE/RX PLAN AGENCY, INC.'S OPPOSED MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) and 12(b)(6)**

## INTRODUCTION

In her Second Amended Complaint ("SAC"), Plaintiff, for the third time, attempts to state a TCPA claim against Americas Health Care/RX Plan Agency, Inc. ("Americas Health"). (*See* Dkt. 41). However, Plaintiff's additional allegations fail to remediate the core deficiencies this Court previously determined required dismissal for failure to state a claim. As such, Plaintiff's SAC should also be dismissed with prejudice.

The four calls – from June 7 and June 10 – are the foundation of Plaintiff's multi-call theory, yet the SAC never alleges who placed those calls, that the calling numbers belong to Americas Health, or that anyone placed the calls on its behalf. As the calls cannot be connected to Americas Health, they are subject to dismissal under Rules 12(b)(1) and 12(b)(6).

The June 7, June 10, and first alleged June 24 calls fail for a second, independent reason that this Court already recognized in granting the prior motion to dismiss. These calls offered free, no-cost government healthcare, not the purchase of anything. Under the Seventh Circuit's controlling decision in *Hulce v. Zipongo Inc.*, 132 F.4th 493, 500 (7th Cir. 2025), a call that does not encourage the recipient to pay for a service is not a "telephone solicitation" and cannot violate the do-not-call rules. Plaintiff's SAC offers no new facts with respect to those calls – just a repeat of the theory, already rejected by this Court, that the "free" offer was a pretext. Plaintiff has added no additional allegations, and the Court's prior determination at the July 8, 2026 Oral Argument still applies. A true and correct copy of the transcript is attached hereto as **Exhibit A**.

As a consequence of the June 7, June 10, and first June 24 calls being subject to dismissal pursuant to Rule 12(b)(6), only a single alleged call on June 24 remains. Assuming *arguendo* Plaintiff did not provide express consent to receive that call (which Americas Health denies), a single call cannot support Plaintiff's DNC claim because the TCPA's private right of action is limited to a person who received ***more than one*** qualifying call within a twelve-month period by

or on behalf of the same entity. *See* 47 U.S.C. § 227(c)(5).

Lastly, regardless of whether the June 2024 call is treated as one or two calls, Americas Health placed no call itself and cannot be held vicariously liable for another's conduct. Plaintiff cannot adequately plead actual authority, apparent authority, or ratification. Because no call is both actionable and attributable to Americas Health, the Court should dismiss the SAC with prejudice.

## FACTUAL BACKGROUND

Plaintiff filed her SAC on July 22, 2026 relying on substantively the same facts as her prior Complaints. She alleges that her residential telephone number was on the National Do Not Call Registry before the calls at issue and that she received at least six calls in June 2024. (Dkt. 41, ¶¶ 25-26). She asserts two claims, both under 47 U.S.C. § 227(c)(5): one on behalf of a National Do Not Call Registry class and one on behalf of an internal do-not-call class. (*Id.*, ¶¶ 102, 117-123).

Plaintiff alleges that, between June 7 and June 24, 2024, she received five (5) calls from various phone numbers that all began by stating that Plaintiff "was eligible for state affordable care act at no cost" and that the "purpose of the call is to let [Plaintiff] know that the government is giving affordable healthcare to the people at zero cost." (*Id.*, ¶¶ 27-36). Plaintiff alleges she did not ask about paid plans on the June 7 or June 10 calls, and that all of the caller IDs were "spoofed." (*Id.*, ¶¶ 30,34,40).

Plaintiff alleges that, on June 24, 2024, she engaged in a conversation with an agent referred to as "Victoria" who attempted to sell her an Allstate Health Solutions health insurance policy. (*Id.*, ¶ 41). Following the call, Plaintiff claims that she received an email from Americas Health with a link to complete the enrollment process. (*Id.*, ¶ 59).

The SAC further alleges that Plaintiff claims she never asked for quotes on paid plans during any call (*Id.*, ¶¶30, 34, 37, 42). Plaintiff also conclusorily alleges that the "no cost"

representations were "a lie and merely a sales tactic to get the 'foot in the door'" (*Id.*, ¶46); the calls were a "pretext" and "marketing trick" (*Id.*, ¶52); and the marketplace enrollment period for free plans ran only from November 1, 2023 to January 16, 2024 (*Id.*, ¶53). Plaintiff also alleges that Americas Health has not terminated or disciplined Defendant Sandra Johnson ("Johnson"), an independent agent of Americas Health. (*Id.*, ¶¶65, 79). Consistent with her prior attempts, Plaintiff fails to plead her conclusory allegations of fraud with the requisite specificity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure.

Plaintiff's theory of liability against Americas Health attempts to rest on insufficient allegations of agency. She alleges that Americas Health "controlled the day-to-day activities of Johnson." (*Id.,* ¶¶ 50-51, 64, 73). Plaintiff further alleges that Johnson, with Americas Health's authorization, hired subagents such as "Victoria," and that Americas Health ratified the conduct by accepting the resulting business and not terminating Johnson. Several of these allegations are pled "upon information and belief," (*Id.,* ¶¶ 50-51), and all of them without any factual basis.

## LEGAL STANDARD

Rule 12(b)(1)

A Rule 12(b)(1) facial challenge argues the plaintiff has not sufficiently alleged a "basis of subject matter jurisdiction." *Apex Dig., Inc., v. Sears, Roebuck & Co*., 572 F.3d 440, 443 (7th Cir. 2009). This challenge requires the Court to accept all "well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc*., 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex*, 572 F.3d at 443).

Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits Defendant Americas Health to move for dismissal based on the opposing party's "failure to state a claim upon which relief can

be granted." Fed. R. Civ. P. 12(b)(6). When determining whether a complaint sufficiently states a claim under Rule 12(b)(6), this Court must accept all non-conclusory factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). A complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, plausible requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "[T]he Seventh Circuit has emphasized that conclusory statements of law and their unwarranted inferences are not sufficient to defeat a motion to dismiss for failure to state a claim." *Nolen v. Trustmark Life Ins. Co.*, 2011 WL 2672260, at *2 (S.D. Ill. June 30, 2011).

## ARGUMENT

Plaintiff's SAC is fatally flawed on both threshold and merits grounds. The June 7, June 10, and the first June 24 calls (*arguendo* the first five (5) calls) are not traceable to Americas Health and/or not actionable telephone solicitations. Moreover, once they fall away, only the *arguendo* sixth call remains, the June 24 call, and that call cannot support a do-not-call claim under the TCPA. As such, dismissal is proper under Rules 12(b)(1) and 12(b)(6).

### I. The June 7 and June 10 Calls Are Subject to Dismissal Under Rule 12(b)(1) As They Are Not "Traceable" to Americas Health.

Plaintiff must establish Article III standing for the calls on which she sues, and she cannot do so for the June 7 and June 10 calls. Standing requires an injury in fact that is "concrete, particularized, and actual or imminent," an injury "likely caused by the defendant," and one redressable by a favorable decision. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). That causation requirement is independent of any statutory cause of action: if "the plaintiff

does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Id.* (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). A bare statutory violation is not enough, because "an injury in law is not an injury in fact." *Id.*

The traceability element requires a causal connection between the plaintiff's injury and the defendant's own conduct, not an injury that flows from the independent action of a third party not before the court. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019). A plaintiff therefore lacks standing where an independent source would have caused the same injury. *Id.* at 1272. Applying that principle to a do-not-call claim, the Eleventh Circuit held in *Cordoba* that call recipients lacked standing where no plausible causal chain connected their injuries to the defendant's challenged conduct. *Id.*

The SAC alleges that the June 7 and June 10 calls came from two unknown numbers, (352) 657-3584 and (914) 786-7030, respectively. (Dkt. 41, ¶¶ 27, 31). Plaintiff never alleges who placed those calls, that either number belongs to Americas Health, or that anyone placed them on Americas Health's behalf. Instead, Plaintiff alleges, without factual support, that "all the aforementioned caller IDs are 'spoofed.'" (*Id.,* ¶ 40). She connects the calls to an Allstate Health Solutions policy only through the later June 24 call, on which she alleges that she spoke with Johnson's sales agent "Victoria." (*Id.,* ¶ 41).

That the June 24 call, which originated from a different phone number than the June 7 and June 10 calls, was allegedly made by a sub-agent affiliated with Johnson, an independent agent of Americas Health is insufficient to tie Americas Health to those earlier calls. (*Id.*). Thus, because any injury from the June 7 and June 10 calls is not fairly traceable to Americas Health, Plaintiff lacks Article III standing to pursue those calls, and there is no case or controversy for the Court to

resolve. The claims, as they pertain to those calls, should therefore be dismissed for lack of subject-matter jurisdiction.

## II. The SAC Fails To Establish Statutory Standing as the Alleged Calls Cannot Support Any TCPA Claim and Dismissal is Warranted under Rule 12(b)(6).

### A. The June 7 and June 10 Calls, and the First June 24 Call Are Not "Telephone Solicitations" Under *Hulce*.

Even if this Court found that Americas Health made the calls, which is not adequately pled and which Americas Health denies, this Court previously rejected Plaintiff's argument that the June 7 and June 10 calls are telemarketing calls as defined by the TCPA because "Plaintiff's allegations about these [first four calls] calls, like those in *Hulce*[,] do not support a finding that defendant intended to encourage plaintiff to pay for anything because they only contained information about free services available." *See* Ex. A, p. 29:17-30:2. The Court's prior finding must stand as Plaintiff in her SAC has made no new factual allegations as to these calls.

Similarly, Plaintiff alleged, as to the first June 24 call, that "Victoria" used "a nearly identical script pitching free health insurance," which for all the reasons stated above, and per this Court's prior holding, is not a solicitation under the *Hulce* ruling. Plaintiff further attempts to plead that "Victoria" tried to sell her on a health insurance policy. However, this is not a well-pled allegation that this Court must accept as true. Unlike her other allegations where Plaintiff apparently quotes the alleged soliciting statements by Victoria, Plaintiff offers no such statements by "Victoria" as to the first June 24 call. The only plausible allegation she made regarding any specific language used by Victoria during this call was the "free insurance" script which is not improper under the TCPA and in no way mentioned or otherwise referred to Americas Health or an Allstate policy.

The pled content of the June 7, June 10, and first June 24 calls encouraged no purchase, and the alleged transition to a paid product allegedly occurred only on the second June 24 call. (Dkt. 41,

¶ 41). These prior calls therefore are not solicitations under *Hulce*, the deficiency is incurable, and the Court should maintain its prior finding and dismiss Plaintiff's claims as to these calls.

### B. Without the June 7 and June 10 Calls, and the first June 24 Call, a Single Remaining Call Cannot Sustain Either TCPA Count.

Once the June 7 call, June 10 call, and first June 24 call are removed, only the second June 24 call remains, and one call cannot support a claim under § 227(c)(5). The statute authorizes suit only by a person who "has received ***more than one*** telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). A single call is not actionable. As one court explained in construing the same provision, the TCPA "does not … allow a plaintiff to bring an action for first call violations." *Charvat v. GVN Michigan, Inc.*, 531 F. Supp. 2d 922, 926 (S.D. Ohio 2008).

That requirement is dispositive here. Americas Health maintains that there was only one call on June 24. In her SAC, Plaintiff alleges that, prior to the alleged "disconnection," she engaged in a conversation with "Victoria" and, unlike the prior calls, she does not allege that she informed "Victoria" that she was not interested and to stop calling. (Dkt. 41, ¶¶ 29, 33, 38, 41-42). In fact, Plaintiff admits that she was interested as she requested to purchase a policy. (*Id.*, ¶ 45). Moreover, Plaintiff, who is a serial TCPA litigant, alleges for the first time in the SAC that the call was disconnected and "Victoria" called back, presumably using the same number. (*Id.*, ¶ 43). As such, even if "Victoria" called back, Plaintiff expressed her consent to the call when she voluntarily chose to answer the call, resume the conversation, and at no point inform "Victoria" that she was not interested. (*Id.*); *see also Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809, 812 (5th Cir. 2026) (ruling that prior express written consent is not required under the statute).

Even if the June 24 calls were treated as separate calls, it was only on the "second" June 24 call where Plaintiff alleges that "Victoria" broached the topic of selling her insurance. (*Id.*).

Taking Plaintiff's allegations as true, it was only on one call, the second June 2024 call, where any alleged solicitation occurs. Nevertheless, this complaint must fail. Because both the National Do Not Call Registry claim and the internal do-not-call claims are enforced through § 227(c)(5), the single remaining call defense defeats both counts.

Plaintiff has now had three chances to state a TCPA claim against Americas Health. With no ability to cure these deficiencies, this Court should dismiss the Complaint with prejudice.

## III. The SAC Does Not Plausibly Allege that Americas Health Is Directly or Vicariously Liable for "Victoria's" Alleged Acts As Required To Satisfy Rule 12(b)(6).

### A. Plaintiff Failed to Sufficiently Allege Direct Liability Against Americas Health.

Plaintiff has not plausibly stated any claim against Americas Health, thereby warranting dismissal of the claims as to at least the June 7 and June 10 calls. The TCPA does not impose liability on defendants, like Americas Health, who "are not directly liable for a call violating the TCPA unless the [defendants] ***themselves*** initiate the call." *Karon v. CNU Online Holdings, LLC*, 2019 WL 3202822, at *2 (N.D. Ill. July 16, 2019) (emphasis added). Furthermore, the Seventh Circuit, as well as this District, have consistently held that for a defendant to have "initiated a call," and therefore be directly liable under the TCPA, it must have either "physically place[d] the call or be 'so involved in the placing' of the call that the entity essentially made it themselves." *Warciak v. Subway Rests., Inc.*, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020) (citation omitted). This is a "demanding standard" that cannot generally survive based solely on calls placed by third-party telemarketers, even if the third party acted on behalf of the defendant. *Bennett v. Celtic Ins. Co.*, 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (cleaned up) (dismissing complaint where "[p]laintiff d[id] not claim that [defendant] made the calls"). After three attempts, Plaintiff's Complaint remains void of any allegations that Americas Health

initiated any of the alleged calls.

The SAC alleges that, on June 7 and June 10, an "unknown" person called her, informing her that "she was eligible for state affordable care act at no cost." The SAC does not allege the name of the caller, that they are or are from Americas Health, or that they otherwise mentioned Americas Health. (*Id.,* ¶¶ 27-28). The same is true for the June 10 calls. The SAC does not identify the caller, allege that they are in any way related to Americas Health, that Americas Health was mentioned or that Americas Health products were even offered as the "purpose of the call [was] to let [Plaintiff] know that the government is giving affordable healthcare to the people at zero cost." (*Id.,* ¶¶ 31-32).

Even the June 24 calls were not pled as being made by Americas Health. In regard to June 24, the SAC solely alleges that Plaintiff received a call from an individual, only known as "Victoria" who allegedly informed her about government insurance and then subsequently offered her an Allstate policy. None of which is enough to plausibly plead that Americas Health initiated the call as courts have recognized, "even if [a telemarketer] place[s] … calls on [a] [d]efendant['s] behalf," a plaintiff usually "cannot hold [a defendant] directly liable under the TCPA." *Smith v. State Farm Mut. Auto. Ins. Co*., 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014) (cleaned up).

Plaintiff failed to sufficiently allege that Americas Health initiated these calls to trigger direct liability against it under the TCPA. More importantly, these defects cannot be cured.

### B. The SAC Does Not Plausibly Allege that Americas Health Is Vicariously Liable for "Victoria's" Alleged Acts.

Without any direct liability against Americas Health, Plaintiff's only course of action left is vicarious liability, but unfortunately that must fail as a matter of law also. Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and

the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01. An agent must have "actual or apparent authority from the principal" to appoint a subagent. *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 832 (N.D. Ill. 2016) (citing Restatement (Third) of Agency § 3.15(2)). Here, Plaintiff's allegations fail to plausibly plead any theory.

**1. Actual Authority**

The SAC set forth no allegations to plausibly plead that either the "unknown callers" or "Victoria" had actual authority to make the alleged calls at issue here. Under an "actual authority" theory, a principal may be held liable for the violations of an agent only if the principal "manifests assent" to an agent "that the agent shall act on the principal's behalf and be subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Advantage Mktg. Grp., Inc. v. Keane*, 143 N.E.3d 139, 148 (Ill. Ct. App. 2019) (citation omitted). "An essential element of agency is the principal's right to control the agent's actions." Restatement (Third) of Agency § 1.01 cmt. f(1). Accordingly, to invoke an actual agency theory, a plaintiff must sufficiently allege that (1) a principal/agent relationship exists; (2) the principal controlled or had the right to control the alleged agent's conduct; and (3) the alleged conduct fell within the scope of the agency. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021) (citation omitted).

Plaintiff did not allege the necessary elements of an actual agency theory. The SAC relies on the following conclusory allegations to attempt to connect "Victoria" and Americas Health:

> [Americas Health] authorized Johnson to hire middlemen, like "Victoria" and the other individuals with whom Plaintiff spoke, to place illegal, and misleading, calls through which Allstate's insurance products would ultimately be promoted, including with the script that the insurance policies were being offered at "zero cost" before telling customers that the "free" plans were unavailable and that the only options were paid plans. (Dkt. 41, ¶ 74).

However, this conclusory allegation is insufficient on two grounds. As an initial matter,

Plaintiff continues to allege fraudulent behavior but remains unable to meet the heightened pleading standards of Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc*., 477 F.3d 502, 507 (7th Cir. 2007) ("when a plaintiff alleges deceptive or fraudulent behavior, such allegations must meet the heightened standard of Rule 9(b)."). This is particularly true where Plaintiff attempts to plead that the enrollment period was closed and therefore Plaintiff could not have obtained free services. Notably, however, Plaintiff intentionally chose to omit from her argument or otherwise ignore that even outside of the enrollment period, individuals like Plaintiff, may still qualify for free state affordable healthcare if they meet certain special enrollment requirements. [1]

Moreover, as a matter of law this is insufficient to hold Americas Health vicariously liable for "Victoria's" actions as explained in *Smith v. State Farm Mut. Auto. Ins. Co.,* 13 C 2018, 2013 WL 5346430 (N.D. Ill. Sept. 23, 2013). In *Smith,* the Court found that even where Plaintiff alleged that State Farm's agents engaged a third-party vendor and that vendor made the call at issue, it was insufficient to establish vicarious liability. *Id.* at *3. Because the plaintiff in *State Farm* failed to allege that: (1) State Farm made the call; (2) that State Farm engaged the sub-agent's services, or (3) that State Farm had any authority over the sub-agent, the Court rejected that formal agency theory. *Id.* at *3-4. The factual allegations pled here are even thinner.

The SAC does not sufficiently allege a sub-agency theory by which to hold Americas Health vicariously liable for the alleged call by "Victoria," a subagent of Johnson. Consistent with the *State Farm* ruling, where the SAC does not (and cannot) allege that Americas Health made the alleged call, engaged the sub-agent's services, or had control over "Victoria" or otherwise expressly authorized "Victoria" to make the alleged June 24 calls, Plaintiff has failed to sufficiently plead vicarious liability against Americas Health for the second June 24 call. The SAC also does

[1] *See*, Special Enrollment Opportunities, https://www.healthcare.gov/coverage-outside-open-enrollment/special-enrollment-period/ (last visited on September 2, 2026).

not plead that "Victoria" stated that she called on behalf of Americas Health or Johnson. As such, Plaintiff has not plausibly pled actual authority.

**2. Apparent Authority**

Plaintiff has also failed to allege a plausible basis for this Court to find that Americas Health is liable under an apparent agency theory. Under the Restatement (Third) of Agency, "[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." § 3.03 cmt. c. Courts in this District have routinely recognized that, "[i]t is well-established that apparent authority must derive from the statements or actions of the alleged principal, not the alleged agent." *Smith,* 30 F. Supp. 3d at 778 (quotations and citation omitted). "In other words, for apparent authority to exist, the principal must communicate either directly or indirectly with the [plaintiff] or take some action that instills in the [plaintiff] a reasonable belief that the actor had authority to act as the principal's agent." *Id.* (quotations and citation omitted). None of which occurred here.

Plaintiff has set forth no allegation in her SAC to support a finding of apparent authority. As pled in the SAC, Plaintiff only communicated with "unknown callers" and "Victoria," and none of the callers identified themselves as working for or on behalf of Americas Health. (Dkt. 41, ¶¶ 27-28, 31-32, 39-48). Plaintiff never alleged that she spoke to Americas Health or even an agent of Americas Health. (*Id.*). Moreover, Plaintiff did not allege that Americas Health ever conveyed to her, directly or indirectly, that those callers were authorized to act on its behalf. Without such allegation, Plaintiff cannot state an apparent agency theory.

Both the Seventh Circuit and this District have held that such allegations are insufficient to plead as a matter of law apparent authority against Americas Health. In the recent Seventh

Circuit case, *Hossfeld v. Allstate Ins. Co.*, the Seventh Circuit held that Allstate cannot be vicariously liable for a sub-agent where Plaintiff offered no evidence that "Allstate interacted with him in any way, let alone in a way that led him to reasonably believe that Allstate authorized the subagent, Atlantic, to act as its agent, even where the subagent stated they were calling on Allstate's behalf." 179 F.4th 1046, 1057 (7th Cir. 2026). The Seventh Circuit rejected plaintiff's apparent authority argument because "Allstate never made those statements, nor did it instruct Atlantic to do so." Though decided on summary judgment, the same reasoning applies here as Plaintiff did not (nor can she) allege apparent authority. Plaintiff does not allege that Americas Health made the alleged calls or statements to her directly, nor does she allege that Americas Health instructed "Victoria" to call Plaintiff. As a result, there can be no apparent authority. This District has ruled consistent with this principle as seen in *Cunningham v. Health Plan Intermediaries Holdings, LLC*. In *Cunningham*, the court rejected the argument that the plaintiff "reasonably believed that the telemarketers had apparent authority simply because they mentioned Defendants' products on their calls" because "apparent authority requires that the principal made manifestations to the third party." 2018 WL 835222, at *6 (N.D. Ill. Feb. 13, 2018). Plaintiff does not allege that Americas Health made any manifestations here. *See also Smith*, 30 F. Supp. 3d at 778-79 (dismissing apparent agency theory).

**3. Ratification**

Plaintiff's last available avenue to assert vicarious liability is ratification. Under the Restatement (Third) of Agency, ratification requires that the principal have full knowledge of the facts and the choice to either accept or reject the benefit of the transaction. *Toney v. Quality Res., Inc.,* 75 F. Supp. 3d 727, 745 (N.D. Ill. 2014) (*quoting* Restatement (Third) Of Agency § 4.02(1)). Here, neither "Victoria's" act of sending a quote nor Plaintiff's alleged charge is sufficient as a

matter of law to constitute ratification.

In *Hossfeld,* the plaintiff argued that Allstate benefitted from the sub-agents' actions as a result of the "thousands of customer insurance quotes and hundreds of issued policies arising from telemarketing calls made on Allstate's behalf." 179 F.4th at 1057. The Seventh Circuit held that where the plaintiff never obtained insurance or any other services, there can be no ratification. *Id.* The Seventh Circuit further held that, "even if the act of sending a quote or email to a potential customer constituted a benefit, it was Allstate's agent, not Allstate, who sent the quote to plaintiff." *Id.* The same reasoning applies here. Plaintiff alleges that "Victoria," not Americas Health, sent the quote to her, as such no benefit can be tied to Americas Health, and as explained further below, Plaintiff did not even obtain insurance or any services as a result of "Victoria's" alleged call.

In *Toney,* plaintiff's ratification theory failed because plaintiff failed to allege that the defendants accepted any benefit from the alleged violating telemarketing calls to plaintiff. 75 F. Supp. 3d at 745. Here, the ratification theory fails for the same reason. Americas Health did not receive any benefit from Plaintiff. Plaintiff alleged that on June 24, 2024, she was charged $405.29 and embedded into her complaint a copy of the charge. However, what Plaintiff failed to acknowledge is that the next day, that amount was refunded in its entirety as shown below.[2] The SAC clearly shows that Plaintiff purchased a product and then promptly cancelled it in an attempt to manufacture standing, which is impermissible as a matter of law. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 416 (2013).

---

[2] A defendant can attach a document that is referred to in the complaint, central to the claim, and authentic, and the court may consider it without conversion. *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 947 (N.D. Ill. 2011).

| Billing ID | Transaction Date | Products | Draft Amount | Payment Method | Type | Payment Status | view all details |
|---|---|---|---|---|---|---|---|
| 90663696 | 6/25/2024 | Select Dental, Access SI (Assoc), TrioMed 30K AMEADDCI, Sterling (LIFE Bundle D) | ($405.29) | Visa - 9964 | Refund | Processed | view details |
| 90663696 | 6/24/2024 | Select Dental, Access SI (Assoc), TrioMed 30K AMEADDCI, Sterling (LIFE Bundle D) | $405.29 | Visa - 9964 | Initial Payment | Processed | view details |

Where Plaintiff failed to plausibly plead that Americas Health had knowledge of "Victoria's" alleged actions or that Americas Health received benefits from Plaintiff as a result of those alleged actions, Plaintiff has failed to plead ratification to establish vicarious liability against Americas Health.

As a result of Plaintiff failing to plausibly plead actual authority, apparent authority, or ratification, Plaintiff cannot maintain a claim against Americas Health as a matter of law and dismissal is necessary.

## CONCLUSION

For the foregoing reasons, Americas Health respectfully requests that the Court dismiss both counts of the Second Amended Complaint against it with prejudice and grant such other and further relief as the Court deems just and proper.

Dated: September 4, 2026

Respectfully submitted,

**AKERMAN LLP**

*/s/Jani K. Mikel*
**JANI K. MIKEL**
Illinois Bar No. 6331445
71 South Wacker Drive, 47th Floor
Chicago, Illinois 60606
Telephone: (312) 634-5700
Facsimile: (312) 424-1900
Email: jani.mikel@akerman.com
Email: elida.asa@akerman.com

- and -

**RYAN ROMAN**
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
Email: ryan.roman@akerman.com
Email: lauren.chang-williams@akerman.com

*Attorneys for Defendant Americas Health Care/RX Plan Agency, Inc. d/b/a Allstate Health Solutions*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, September 4, 2026, I caused a copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/Jani K. Mikel*
Jani K. Mikel