# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KELLY BLAND, | ) | Case No. 25 C 14183 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAS HEALTH CARE/RX PLAN | ) | |
| AGENCY, INC., et al., | ) | Chicago, Illinois |
| | ) | July 8, 2026 |
| Defendants. | ) | 10:01 a.m. |

TRANSCRIPT OF VIDEO PROCEEDINGS - MOTION
BEFORE THE HONORABLE MARTHA M. PACOLD

APPEARANCES:

For the Plaintiff: PERRONG LAW LLC
BY: MR. ANDREW R. PERRONG
1669 Wedgewood Road, Suite 218
Yardley, Pennsylvania 19067

For the Defendant Americas: AKERMAN LLP
BY: MR. RYAN A. ROMAN
201 E. Las Olas, Suite 1800
Fort Lauderdale, Florida 33301

Court Reporter: KATHLEEN M. FENNELL, CSR, RMR, FCRR
Official Court Reporter
219 South Dearborn Street, Room 2328A
Chicago, Illinois 60604
Telephone: (312) 435-5569
Kathleen_Fennell@ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court, in part via videoconference:)

(Call to order.)

THE CLERK: Calling Case No. 25-cv-14183, Bland v. Americas Health Care/RX Plan Agency, Inc. for oral argument.

Counsel, state your name for the record starting with plaintiff's counsel.

MR. PERRONG: Good morning, Your Honor. Andrew Perrong for the plaintiff, Ms. Bland.

THE COURT: Good morning.

MR. ROMAN: And good morning, Your Honor. Ryan Roman on behalf of the defendant Americas Health Care.

THE COURT: Good morning.

We're here for an argument on the motion to dismiss. Are the parties ready to proceed?

MR. ROMAN: Yes, Your Honor.

MR. PERRONG: Yes.

THE COURT: Okay. Great.

Anything to mention in terms of the status before we actually proceed with the argument?

MR. ROMAN: Nothing on behalf of the defendant, Your Honor.

MR. PERRONG: And nothing on behalf of the plaintiff, Your Honor.

THE COURT: Okay. I think that I set this for

15 minutes per side, so it's not a totally strict time limit, but that's just to give, you know, an approximate time frame.

So we would normally just track the order of the briefs. So we'll start with the defense, then turn to the plaintiff, then come back to the defense for a short reply.

Okay. So we can proceed with the defense's argument whenever you're ready.

MR. ROMAN: Thank you, and good morning, Your Honor.

There are two issues before the Court today: First, whether the calls described in the amended complaint qualify as telephone solicitations under the TCPA, and based on the 7th Circuit's recent 2025 decision in *Hulce v. Zipongo*, the calls do not qualify as telephone solicitations because nothing was being offered to be sold; and, second, whether plaintiff can avoid the heightened pleading standard of Rule 9(b) despite alleging fraud and misrepresentation.

Your Honor, I'd like to start with what I believe is the most important authority before the Court, the Seventh Circuit's recent decision in *Hulce*. *Hulce* tells us that a TCPA solicitation is not simply any communication relating to a product or service. The communication must be initiated for the purpose of encouraging someone to pay for a service. This is the controlling standard in the circuit.

If we look at what plaintiff actually alleges was said during these calls, on June 7th, the caller allegedly stated

she was eligible for the state Affordable Care Act at no cost. On June 10th, the alleged script was that the government was providing affordable healthcare at zero cost. The additional June 10th call allegedly offered free healthcare.

None of those statements asked plaintiff to buy anything, asked plaintiff to pay anything, identify Americas Health Care, direct plaintiff to a website, encourage a purchase, or promote a paid product. Those allegations are materially indistinguishable from *Hulce*. And under *Hulce*, those are considered informational statements and not solicitations.

Plaintiff's opposition focuses on what happened eventually on June 24, but the problem is that a later transaction does not change the nature of the earlier communications. The TCPA asks whether the calls themselves were solicitations, and the allegations regarding those calls were that they were messages about no-cost healthcare benefits. And importantly, plaintiff still does not allege what anyone specifically said during the June 24th call other than that it began with a nearly identical script to the earlier calls.

The opposition relies on cases such as *Newell*, *Chesbro*, *Cacho*, *Suescum* and other non-binding authority, none of those cases are Seventh Circuit authority, and none of them have what we have here, a pleaded script discussing no-cost healthcare benefits. In fact, *Newell* is especially helpful to

defendant. The *Newell* court distinguished *Hulce* partly because the communications there did not involve free services, and the court specifically observed that a case involving free services would be different. And that is our case. So even accepting every factual allegation as true, *Hulce* remains the controlling authority and requires dismissal.

The second issue is straightforward. In the opposition, plaintiff repeatedly says this is not a fraud case, but that is not what the complaint says. The complaint repeatedly alleges lies, misrepresentations, false representations, false premises, and deceptive conduct.

Those are classic fraud allegations, and indeed plaintiff's entire effort to distinguish the *Hulce* case depends on the allegation that the free healthcare statements were false.

The Seventh Circuit's decision in *Borsellino v. Goldman Sachs Group* is directly on point. *Borsellino* holds that when claims are grounded in allegations of fraud or deception, Rule 9(b) applies regardless of how the claim is labeled, and that's precisely the situation here.

Plaintiff may call this a TCPA case, but the theory advanced is that the callers lied in order to sell insurance, which is a fraud-based theory and, therefore, it is our position that Rule 9(b) should apply.

Plaintiff never alleges facts showing the statements

were false. She never alleges that she applied for the no-cost healthcare, that she was denied, that she was ineligible, that the programs didn't exist, or that the callers were wrong. Instead, she simply labels the statements as lies. But under *Borsellino*, as well as *Iqbal* and *Twombly*, this legal conclusion is not enough.

Your Honor, the Seventh Circuit's decision in *Hulce* forecloses plaintiff's TCPA theory because the alleged calls describe free or no-cost healthcare benefits rather than an effort to persuade plaintiff to pay for a service. Plaintiff attempts to avoid *Hulce* by alleging the statements were deceptive and fraudulent. But once plaintiff goes that route, *Borsellino* and Rule 9(b) apply. And plaintiff does not plead facts showing that those statements were false in the first place.

And for those reasons, we respectfully ask that Court dismiss the first amended complaint with prejudice.

I'd be happy to address any questions Your Honor may have.

THE COURT: Okay. Thanks. I don't think I have any questions at this point. I may later after I've heard both sides' arguments, but let me just turn to the plaintiff's argument next.

Thank you.

MR. PERRONG: Good morning, Your Honor. May it please

the Court.

Andrew Perrong for the plaintiff Kelly Bland and the putative classes.

Your Honor, as my colleague mentioned, this motion presents two questions and only two. First, whether the amended complaint plausibly alleges that Ms. Bland received a call that was a telephone solicitation under the TCPA and, second, whether or not Ms. Bland's allegations are subject to the heightened pleading standards of Rule 9.

The answer to the first question is yes, and the answer to the second question is no.

And the reason for that is because of a single fact that's alleged in paragraphs 47 through 51 of the first amended complaint, and that is one that the defendant's motion cannot explain away.

On June 24th, 2024, within an hour of the last call alleged, defendant charged Ms. Bland's credit card for $405.29 for an Allstate health insurance policy. That's not a characterization. That's not an argument that is improperly pled. The complaint, in fact, attaches a screenshot of that charge and the Allstate enrollment email that preceded it.

So this is what the campaign looked like as pled in the complaint. It opens with calls to a number that's on the Do Not Call Registry and that remarkably should have been on Allstate's internal Do Not Call List, a call that had callers

say that the government was giving away healthcare at zero cost. Obviously, Your Honor, that's part and parcel of marketing in today's day and age. People market things and make extraordinary claims all the time as hooks to get people to buy something.

As we indicate in our brief in the -- in the cases that we indicate in our brief, very often, there are free estimates or things that are -- that encourage people to buy -- the ultimate question under the TCPA is whether or not a telephone solicitation encourages the purchase of property, goods or services.

So here, we have a telephone call that at the end encouraged the purchase or sale of property, goods or services, of course, under an initial script that we don't deny says that the healthcare was free; but people have used these sorts of scripts all the time.

And that's where *Hulce* becomes distinguishable. In *Hulce*, plaintiff received a call for services that were genuinely free. They were already included in Hulce's existing Medicare plan from a company that was already servicing Hulce, and following through meant that Hulce would actually get paid a gift card for participating in the defendant's offers.

Here, there was no existing plan, there was no existing healthcare plan, there was no existing relationship, and nothing free. Following through with the sales pitch, as

Ms. Bland did, resulted in Ms. Bland paying Allstate $405.29. Here, money flowed in the opposite direction than in *Hulce*. Moreover, in *Hulce*, the defendant had nothing to sell.

Here, the defendant had nothing free to sell. Her only appointments, Ms. Johnson -- the other defendant who was defaulted, and I think that that's telling here -- her only appointments were for Allstate commercial insurance policies. The callers that Ms. Bland received calls from weren't the government. They couldn't deliver government benefits, and moreover, I think the other thing that's distinguishable here is *Hulce* was a summary judgment case on a proven record that at summary judgment, the services there were free.

Here, the operative allegation is that the calls were not selling free services, and that allegation must be accepted as true at the pleading stage under Rule 12 and under the ordinary pleading standard or even the heightened pleading standard of Rule 9.

So moreover, I think, you know, just to address my colleague's concern about what -- what was pled in the complaint regarding the call that Ms. Bland actually did receive and actually went through with the purchase on is that the call began with an identical script, and that full sales conversation is pleaded.

So, Your Honor, to the extent that there is some sort of belief that the plaintiff's allegations are inadequate, I

think that the proper allegation is -- is -- or the proper resolution is to amend -- is to allow leave to amend.

Moreover, the plaintiff also wins under *Hulce*'s test. *Hulce* held that a telephone solicitation is a call made for the purpose of -- and I'm using the court's words here -- persuading or urging someone to pay for a service. Ms. Bland was asked and persuaded to pay literally because Ms. Johnson quoted Ms. Bland a monthly premium, asked whether she was okay for the pricing, and enrolled her. Allstate then sent her a PIN code link to e-sign an insurance contract that started out as an allegation -- or started out as an offer for supposedly "free" healthcare and then became a sale for a $405-a-month health insurance policy.

If urging someone to pay for a good or service means anything, it means that. And I think that that's then, again, the difference in *Hulce* which is dispositive here, which is that the summary judgment record in *Hulce* established that the nutrition services there were genuinely free and were already included in a plan that Mr. *Hulce* already had access to. Unlike here, where the plaintiff was ultimately at the end of the day asked to pay the defendant.

If defendant's rule was true, this would write a safe harbor into the statute that Congress never enacted. On defendant's theory, if the purchase -- if the purpose of a call starts with I'm offering you a free service or a free estimate,

that call is supposedly informational regardless of whether or not it ultimately ends in a purchased service or is ultimately made to encourage the purchase of a service or a good.

If that were the case, then every telemarketer in America could open up every call with the sales pitch that it's offering something for free, like a free estimate, even if it ultimately ends up selling the called party something, and that would make the TCPA a dead letter.

And, Your Honor, the courts that have looked at this pattern have no trouble calling it what it is. This is the case in the *Newell* case that we cite. It's also the case, and it's a relatively recent case, it was just decided a week ago out of the Ninth Circuit in *Coffey v. Fast Easy Offer*, and we'd be happy to supplement our briefing with that case. But the district court decisions all -- and quite frankly, the -- the *Hulce* case do not look to the way that the call starts out, but they look to the totality of the circumstances of the call.

So that's, I think, the most important thing here is the totality of the circumstances illustrates that Ms. Bland was asked to purchase something.

Defendant's second argument is that because the complaint uses words like "false" and that the allegation that the -- or the sales pitch, that it was a free call was a lie, the entire case transforms into a fraud case that's governed by Rule 9. But that gets *Borsellino* backwards.

That case asks whether a claim is premised upon a course of fraudulent conduct, that is to say whether fraud is the foundation of the claim. It's not an exercise in seeing whether or not there's words that have fraudulent undertones in the complaint. The claims here are TCPA, statutory TCPA do not call claims that are governed by Rule 8's ordinary pleading standard. Their elements are simple, and it's that there's four or more calls that the plaintiff received within a 12-month period to a number on the Do Not Call Registry that are telephone solicitations.

Falsity is not an element of the statutory claims under the TCPA. Reliance is not an element. So, Your Honor, you can take a red pen to this complaint and strike every instance of the words false and misrepresentation, and both causes of action would still stand exactly as pleaded because the plaintiff is essentially saying that this allegation that there's free goods or services is just a sales pitch. It's nothing more than saying, hey, I have a free estimate for a roof, and are you interested in getting a free estimate for a roof?

The obvious goal of that call is to get you to buy a new roof. The obvious goal of this call, even if saying, hey, I'm giving you -- I'm looking to "inform" you about free health insurance, that information is, oh, you're not eligible for free health insurance. We're not selling free health

insurance, but we can sell you a cheap, low-cost plan for $400 a month, which we can disagree as to whether or not that's low cost, but that's beside the point. She followed the path on the call that started with a call saying that, hey, we're going to sell you free health insurance, and it ended up costing her $405.

So she doesn't need to plead a hypothetical statement that, oh, you're not eligible for a free plan or, oh, we're not going to give you a free plan. She never tried to sign up for a free plan. She followed what the caller said, and they tried to sell her a paid plan on the same call.

So the proof that the "free" plan was false is the charge on her credit card. Defendant's argument amounts to saying that a bait-and-switch victim can't complain unless she first demands that she get the bait that she was baited into the call with. That's never been the law, and that's certainly not a pleading requirement.

So because even on *Hulce*'s test, the plaintiff has pled the elements of her TCPA claim and because pleading the requirements of fraud is not an element of those claims, and moreover because those elements are not required and even if it was, the plaintiff pleads more than factual specificity, including the date and time of the attempted alleged charge and the call itself to allow Allstate to investigate and address those claims. Even under Rule 9's heightened pleading

standard, the motion should be denied.

I welcome the Court's questions.

THE COURT: Okay. Can you -- do you think there is a reasonable inference under *Twombly* or *Iqbal* that the purpose of the last call was to sell services, to sell defendant's services?

So, you know, what explains how the call goes from an initial question -- or initial statement of you qualify for free healthcare to ultimate question do you want to buy our healthcare plans?

MR. PERRONG: So, Your Honor, I will just represent that the call becomes -- goes from you're -- -- you're -- and under *Twombly* and *Iqbal*, the complaint alleges that the plaintiff was told that it was a free healthcare plan. She went through and answered all the agent's questions regarding her address, medical history, things of that nature, and then at the end was attempted to be sold a paid healthcare plan.

I don't believe that the plaintiff was ever told that she was applying for something free or that she didn't qualify. It was -- ultimately it just went through, and the complaint alleges as much, that -- that she went through from the call and the initial part of the call through to the purchase of the goods or services.

THE COURT: Okay. I mean, are there other facts that might change -- or that my affect the jump from the

introduction to the offer? So how did the last call go from the introduction to the offer, I guess? Are there -- are there other facts or allegations that could get at that issue?

MR. PERRONG: I don't believe that we've alleged additional facts. I think that, again, on the record as pled, plaintiff was urged to pay and did pay for a health insurance plan on that last call, which makes *Hulce* distinguishable and ultimately, again, *Hulce* was decided at summary judgment. It wasn't decided at the pleading stage.

So to the extent, Your Honor, that there are some additional allegations or things that need to be fleshed out, defendant's certainly free to make that argument at summary judgment as to the entire text of the call and see what was alleged or -- or potentially just giving leave to amend to the extent that anything is unclear.

But I submit that under Twiqbal, under the *Twombly-Iqbal* standard, plaintiff has pled exactly what's required of her at the pleading stage under *Hulce* to establish that the calls were really made to encourage the purchase of a good or service, and that's, you know, divined from the caller's not just intent, not just from a caller-stated intent but what actually happened on the call, which was that she was sold a policy.

THE COURT: Okay. Would it matter if the recipient, rather than the caller, initiated the discussion about other

healthcare plans?

MR. PERRONG: No, Your Honor. And I -- the Ninth Circuit case of *Coffey v. Offer* addresses this a bit. What matters is the caller's intent in making the call. So the caller is intending to, at the end of the day, sell health insurance. A caller isn't calling -- Allstate's not the government. It's not calling to say that, you know, we want to encourage you to purchase or to sign up for the government's healthcare because that would make no sense. It doesn't -- why would Allstate be making calls to encourage the plaintiff just to sign up for a free healthcare plan that it wouldn't benefit from and wouldn't get any, you know, money from? It makes no sense.

So -- and what the -- the actual statute itself is written in terms of the caller's purpose must be for the purchase -- for the purpose of encouraging the purchase or rental of property, goods or services. So from -- from the complaint, I think that we've adequately alleged that it's -- the caller's purpose here was to encourage the purchase of an Allstate healthcare plan.

THE COURT: Okay. But, okay, if the defendant was calling to tell everybody about free government health insurance and then the plaintiff requested information about defendant's other plans, then is there a reasonable inference that the initial call was to sell defendant's service?

In other words, if plaintiff is the one who brings up the topic, can we use that to infer defendant's intent?

MR. PERRONG: No, Your Honor, because, again, if it's -- asking questions designed to uncover the defendant's intent is not a substitute for actual discovery as to what the defendant's intent is, which I think is why, you know, *Hulce* was decided at summary judgment because these are not questions or answers that can -- can be addressed at the pleading stage.

The plaintiff has, I respectfully submit, has alleged that what the caller's intent was and pled facts that would be consistent with that, that allowed the Court to draw the inference of what the caller's intent is at the pleading stage. Certainly, that might turn out to not be persuasive to the court. If that was the case that the plaintiff alleged or -- or had a -- made that kind of statement, we don't allege it. I don't believe that that was a statement that the plaintiff made.

But certainly to the extent that defendant has recordings of that call or additional information that -- that can shed light on the issue, I think that that's something that needs to be decided at the summary judgment stage.

THE COURT: Okay. Thanks. I think at this point, I don't have any other questions.

MR. PERRONG: Thank you.

THE COURT: So we can turn to the defendant.

MR. ROMAN: Can we turn to a brief reply?

THE COURT: Yes, we can turn to the reply.

MR. ROMAN: Thank you, Your Honor.

Just to begin where we left off with counsel, there are four cases relied upon by plaintiff in her briefing: *Cacho*, *Newell*, *Rockwell* and *Suescum*, all of which were determined at the dismissal stage, two of which resulted in dismissals of those complaints. So we do believe that this is an appropriate stage of the case to evaluate the pleading itself and whether as a legal matter it is sufficient.

When counsel began his argument today, he focused on two paragraphs, paragraphs 47 and 51 of the amended complaint. Those are not allegations relating to the content of any call, but they focused on post-call conduct, emails received after the alleged final call and a payment or alleged payment that was processed or made.

The charge on the credit card itself might give rise to some other claim but is not itself sufficient to give rise to a TCPA claim. That requires that there be a call, a text message, or facsimile.

And so if this was a solicitation, I would propose that it was a really terrible one because it never actually identifies, at least with respect to the first four calls, who the call is being made on behalf of. And so no recipient of that call would have any way to determine who is actually

soliciting them, and we think the contents also makes clear that they're not seeking any sort of payment.

These agents, including Ms. Johnson, are not captive agents only selling Allstate products, nor do I believe that that is alleged to be the case in the complaint. But it is not the case. They sell other products as well, and I think as we've all seen as we drive by places that offer free Obamacare enrollment, these types of products likely earn those agents some sort of a payment or commission, but to the recipient, they're free.

And so that was the case in *Hulce* where, as long as the recipient is not being asked to pay anything, it does not qualify as a telephone solicitation.

The only allegation here is that the final call on June 24 was revealed to be an Allstate Health Solutions policy, but the allegation itself does not allege that the caller revealed this. Rather, they may be claiming that it was revealed by the subsequent email.

And so the pleading itself does not actually state that the caller on behalf of Americas Health Care actually identified Allstate Health Solutions or Americas Health Care as the maker of the call.

The pleading itself also does not track all that counsel offered in his argument as to what he claims the call said. There's no allegation in the complaint that the caller

asked if the premium was okay, for example, and really the allegations are focused on paragraphs 36 through 40 of the amended complaint. So we would ask that the Court focus attention on those specific paragraphs when evaluating whether or not that final call could be deemed to be a telephone solicitation.

And, finally, with respect to the *Borsellino* case and whether or not it requires that the action itself be sort of premised upon fraud, that case finds that the heightened pleading requirement is a response to the great harm to the reputation of a business, firm or other enterprise a fraud claim can do, and goes on to state that although claims of interference with economic advantage, interference with fiduciary relationships and civil conspiracy are not by definition fraudulent torts, Rule 9(b) applies to averments of fraud, not claims of fraud. So whether the rule applies will depend on the plaintiff's factual allegations.

We believe that a fair reading of this complaint would require the application of Rule 9(b), and if, as counsel suggests, that those allegations are unnecessary, then we would ask that they be stricken for the policy reasons set forth in *Borsellino* or that the action be dismissed without prejudice, although we would suggest that under *Hulce,* the dismissal should be with prejudice.

Thank you, Your Honor.

THE COURT: Okay. Can we just focus on the last call, where plaintiff actually bought the defendant's services. Is that call covered by *Hulce*?

MR. ROMAN: We believe it is because as alleged, it claims that the call began with a nearly identical script, which is the free offer of government healthcare; that plaintiff spoke to Johnson sales agent Victoria, and this is paragraph 38, who tried to sell her on a health insurance policy which was revealed to be an Allstate Health Solutions policy.

Again, because we believe that this averment should be with more specificity, but even as pled, if it's nearly identical script, then that was offered for free as far as the government healthcare. What we don't know is who raised this issue of a health insurance policy for sale and what the nature of that conversation was.

THE COURT: And, sorry, can we go back to you were just citing certain paragraphs of the complaint. Can you just point back to those quickly so I can see. I now have the complaint pulled up, and I'm -- I would just like to see exactly what you were referring to in those last couple of comments.

MR. ROMAN: Yes, Your Honor. I was referring specifically to paragraph 38, but you go from paragraphs 36 through 40, I believe that captures the discussion.

THE COURT: Okay. So I'm there. I'm looking at those paragraphs, but -- and I'm sorry to ask you to repeat, but can you just say again what you were -- what's your argument about the last call?

MR. ROMAN: We -- our argument is that even if that later transaction had occurred as alleged by plaintiff, that *Hulce* asks whether the communication was initiated for the purpose of encouraging someone to pay for a service, and the actual scripts that plaintiff pleads are all about free and no-cost healthcare, so we believe even with respect to this call, which again alleges that it began with a nearly identical script, that it falls within the language of *Hulce*.

THE COURT: Okay. So you're saying the initial purpose of the call comes from or is reflected in the script, which this complaint says was nearly identical; whether the call resulted in a transaction ultimately or not does not change that initial purpose reflected in the script, is that essentially the argument?

MR. ROMAN: That's correct, Your Honor.

THE COURT: Okay. And what's your response to the -- I think the plaintiff was arguing, well, you know, details about what exactly occurred during the call. Those are factual details. *Hulce* was a summary judgment case. Why isn't this an issue for discovery, you know, like the actual -- what actually occurred, the details of that call, is that an issue for

discovery, as opposed to a motion to dismiss?

MR. ROMAN: Our position is that as pled, that the allegations are insufficient to satisfy *Hulce*, and so therefore we think that dismissal would be appropriate.

And as I mentioned, at least four of the cases that were relied upon by plaintiff in their opposition were at the dismissal stage, two of which resulted in dismissals I will say without prejudice, but the court did evaluate this very question regarding whether or not it fit within the definition of a telephone solicitation.

THE COURT: Okay. And what -- I don't know. Is there a -- is there a reasonable inference that the purpose of the calls is to sell defendant's services? In other words, why would Allstate advertise government plans? I mean, I guess -- yeah, that's one question.

MR. ROMAN: Because these are not captive agents, there is probably some financial incentive to them to sell government healthcare even at no cost because they probably receive some financial remuneration for that. But under *Hulce,* the court held that that wasn't the analysis as to whether or not the caller might make money. It was whether the person receiving the call was being asked to pay any money.

So there is a reason why this call may have been made with respect to government healthcare at no cost by this particular Sandra Johnson individual because she does not work

solely on behalf of selling Allstate policies.

THE COURT: Okay.

Okay. Just one moment, please.

Okay. Thank you both for your arguments today. I am prepared to proceed with a ruling. I'm going to just rule from the bench today. In other words, I'll be giving my reasoning and the ruling here on the record.

I do not intend to issue a separate opinion that has the reasoning, but as I just mentioned, I'll be giving the reasoning at this point on the record, so if anybody needs the reasoning, it will be available to you on the transcript.

And so because I am going to provide the reasoning, it will take a little bit of time, so I appreciate your patience as I walk through the reasoning.

I will issue a separate or a minute entry, so there will just be a short minute entry that gives the bottom line, but that minute entry won't contain the reasoning. The reasoning will be on the transcript.

So before -- or pending -- the pending motion is defendant Americas Health Care/RX Plan Agency, Inc.'s motion to dismiss plaintiff's amended complaint, which is Docket 12. That motion is a motion for -- or to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

I gave the full name of defendant a moment ago. Just

for ease of reference, I'll refer to defendant as Allstate because defendant is a subsidiary of Allstate, and that's how plaintiff's complaint refers to the defendant.

At the pleading stage, it's well established the court takes all well-pled allegations in the complaint as true. And that's under *Twombly* and *Iqbal*. At this stage, the plaintiff only needs to provide enough facts to state a claim for relief that is plausible on its face, and the Court draws all reasonable inferences in favor of the plaintiff.

The complaint must permit the Court to infer more than the mere possibility of misconduct. There must be a plausible claim.

To review the facts briefly, and, again, I'm taking factual allegations as true under the *Twombly-Iqbal* standard, so I'm going to take these facts from the plaintiff's amended complaint, which is Docket 12.

Plaintiff alleges that defendant violated the TCPA, or Telephone Consumer Protection Act, of 1991. The TCPA prohibits sending multiple telemarketing calls to a residential telephone that is on the National Do Not Call Registry. *See* 47 U.S.C. Section 227(c)(5). According to the complaint, plaintiff uses her telephone number only for her residential and personal needs, not for any business reasons. Her phone number is on the National Do Not Call Registry list.

Additionally, plaintiff is on defendant's internal Do

Not Call List and has been since May 2021, when Allstate confirmed that her number is on the Allstate-specific Do Not Call List.

In addition to the National Do Not Call List, the FCC has regulations requiring company-specific do not call systems. Those regulations are codified at 47 C.F.R. Sections 64.1200(d)(1) through (7).

Nonetheless, plaintiff has received at least five calls from the defendant or received at least five calls from the defendant in June 2024. The first call stated that it was informing her that she was "eligible for state Affordable Care Act at no cost."

The second caller stated that "the purpose of the call is to let you know that the government is giving affordable healthcare to the people at zero cost."

The third and fourth callers offered plaintiff "free" health insurance using practically identical scripts.

After each call, plaintiff asked not to be called again, but to no avail. Despite the promise of healthcare "at no cost" or "free," plaintiff alleges that the calls were actually intended to be a sales tactic to help sell defendant's insurance plans which were not free.

The fifth call started off with a nearly identical script before the caller attempted to sell plaintiff a health insurance policy, which turned out to be from Allstate. The

caller was unable to sign plaintiff up for a plan without her manager who plaintiff alleges is defendant Johnson.

And I'll just note that defendant Johnson is not a movant in this motion to dismiss.

Each of the callers also stated that they were from the state government or state Affordable Care Act marketplace, but defendant Johnson is not a state employee and was not calling on behalf of the marketplace itself. According to the complaint, she is an employee of Allstate, and instead the goal of the calls was to sell the private insurance plans which happened to be on the marketplace.

The charges that plaintiff incurred from signing up were directly from Allstate. As defendant Johnson's employer, defendant Americas Health Care, according to the complaint, is liable under the TCPA for telemarketing calls made by its agents, including defendant Johnson.

Turning to the claims that are alleged in the complaint, plaintiff brings two related claims on behalf of the proposed class. The first claim is that defendant is violating the TCPA by sending telemarketing calls to the plaintiff and others on the National Do Not Call List in violation of 47 U.S.C. Section 227(c)(5) and 47 C.F.R. Section 64.1200(c).

The second claim is that defendant is violating the TCPA by sending telemarketing calls to plaintiff and others on their internal Do Not Call List in violation of 47 U.S.C.

Section 227(c)(5) and 47 C.F.R. Section 64.1200(d).

Turning to the analysis, defendant argues that plaintiff's complaint must be dismissed for two reasons: First, defendant argues that the alleged calls are not telemarketing solicitations under the TCPA under *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025).

Second, they argue or defendant argues that plaintiff's allegations of fraudulent or deceptive behavior fail to meet the Rule 9(b) heightened pleading standard.

Plaintiff argues that *Hulce's* rule does not apply here because *Hulce* applies to only purely informational calls and that plaintiff's complaint does not allege fraud, so it falls under Rule 8 pleading standard as opposed to Rule 9(b)'s heightened pleading standard or, in the alternative, plaintiff argues that she meets or the complaint meets Rule 9(b)'s heightened pleading standard.

Starting with the first issue, the TCPA governs unwanted telephone solicitations. In *Hulce*, the Seventh Circuit held that a telephone solicitation requires that the call or message be initiated with the purpose of persuading or urging someone to pay for property, goods, or services. *Hulce,* 132 F.4th at 500. In *Hulce*, the defendant sent approximately 20 text messages and phone calls to the plaintiff who was on the National Do Not Call Registry offering giveaways if the defendant participated in no-cost telehealth visits, no cost to

plaintiff, that is. *Id.* at 496. The Seventh Circuit held that these calls were not telephone solicitations because the purpose of the calls was only to encourage the plaintiff to use defendant's services, not to "pay for the services that were free to him." *Id.* at 500.

The court rejected plaintiff's argument that the court should consider defendant's "purpose in initiating its communications" because the facts alleged could not support a finding that the defendant intended to encourage plaintiff to pay for anything. *Id.*

Additionally -- or in addition, the court noted that contrary to plaintiff's contention -- I'm sorry. Let me say that once more.

I'll just note that contrary to plaintiff's contention, the Seventh Circuit did not state in *Hulce* that *Hulce* applied only to purely informational calls.

So how do these principles apply to the allegations here? There are, as I described earlier, five different phone calls in the allegations. The first four of those calls plainly fall under *Hulce*. Plaintiff's allegations are that the calls informed her that she was eligible for healthcare "at no cost" or "at zero cost" or for "free," and that's reflected in the amended complaint, Docket 12.

Plaintiff's allegations about these calls, like those in *Hulce*, do not support a finding that defendant intended to

encourage plaintiff to pay for anything because they only contained information about free services available.

The last phone call, the fifth phone call, that is a closer call, but the facts as alleged by plaintiff also bring it within *Hulce*. The call allegedly started off with a nearly identical script offering free healthcare.

Then, without explaining how the conversation reached that point or reached this later point, plaintiff alleges that the caller attempted to sell her a health insurance policy. It is not apparent from the facts alleged whether the caller brought up the alternative health insurance plan on her own or whether plaintiff voluntarily initiated the discussion about other health insurance plans.

The fact that a conversation may take a particular path does not mean that the initial purpose of the call was for it to take that path. In *Hulce*, the Seventh Circuit rejected plaintiff's argument that the fact that a call may make a party more likely to use defendant's services in the future automatically makes the call a telephone solicitation.

Here, plaintiff has not alleged enough facts for the Court to draw a reasonable inference that the purpose of initiating the conversation was to persuade or urge plaintiff to pay for defendant's services. So the complaint is dismissed on that basis.

That leaves the question of amendment. Generally, if

a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem. That's from *Bausch v. Stryker Corporation*, 630 F.3d 546, 562 (7th Cir. 2010). In addition, the *Runnion* case from the Seventh Circuit, *Runnion ex el. Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510 (7th Cir. 2015), says unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss. That's *Runnion* at 519-20. I'm omitting the quotation.

Here, it is not certain that amendment would be futile. Plaintiff may be able to plead additional facts about the last call that would allow a reasonable inference that the purpose of the call was for plaintiff to pay for defendant's services, such as how the conversation turned from the initial information about free healthcare to defendant's healthcare plans. Thus, it is not "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Runnion*, 786 F.3d at 519-20.

And so plaintiff is granted leave to file an amended complaint if she can do so consistent with this ruling and Rule 11, and we can pick a date for the filing of an amended complaint.

How long does plaintiff need for that?

MR. PERRONG: Your Honor, we can get an amended

complaint on file by the 22nd if that works for Your Honor and the defendant.

THE COURT: Sure. That works fine.

So July 22nd for an amended complaint. Do you want to set a deadline now for any response to the amended complaint?

MR. ROMAN: That would be fine for defendant, Your Honor. Perhaps we could choose a date three weeks from the 22nd, if that's okay with the Court.

THE COURT: Sure. I mean, I -- I also -- I mean, sorry, I am -- I would say both of these deadlines are flexible. I will sometimes give, you know, 30 days for an amended complaint, same amount for any answer or response.

So, I guess, either party if you have any different preference, you know, let me know either now or later.

MR. ROMAN: Thank you, Your Honor.

THE COURT: So I guess let me come back to the plaintiff.

Do you want to stick with the 22nd? Do you want anything -- any additional time than that?

MR. PERRONG: No, Your Honor. I think we can get it done by the 22nd.

THE COURT: Okay. So July 22nd will be the amended complaint.

And, I'm sorry, I think you requested 21 days. Do you still want that?

MR. ROMAN: That should be fine for us, Your Honor. So that would be August the 12th.

THE COURT: Okay. So August 12th for any response to the amended complaint.

Let me also just ask the parties whether you have -- I mean, and this is just something that I am regularly asking -- do you have any settlement discussions ongoing or is that a realistic possibility? Have you exhausted settlement possibilities?

MR. PERRONG: Your Honor, we have discussed a little bit, but I think that the defendant was looking for a ruling on the motion to dismiss. So to the extent that we can have another discussion possibly in the interim, I think that would best serve all parties.

MR. ROMAN: And we agree. We're open to additional discussions, and we'll reach out to have those.

THE COURT: Okay. Should we build any time into the schedule for those? And, you know, what we could do is -- I don't know. What would be the most helpful for you for those discussions? Would you prefer to have those before the amended complaint is filed? Would it make more sense -- I mean, like, what's -- is there any sequence of these filings that we've just discussed versus the settlement discussions that would assist you as far as settlement?

MR. ROMAN: Defendant's perspective, I think we can

accomplish picking up those discussions even within the time frame we discussed, so we're comfortable. However, if plaintiff wishes to postpone things a week or two weeks, that's also fine for us.

MR. PERRONG: Yeah. We'll have our conversations, and we'll inform the Court, I suppose, if we need any additional time.

THE COURT: Okay. Also, I would like to have or to set a status report that reports on the status of settlement. We could also, I guess, use that as an opportunity for if we need to set a -- say that there's an amended complaint and there's another motion to dismiss, as opposed to an answer, then we'll need to set a briefing schedule on that motion.

So maybe we should set a status report that covers both settlement and, you know, a briefing schedule if one is necessary for some logical point. So if the amended complaint is due July 22nd and the answer or other response is due August 12th, then I could set a joint status report for August 19th on settlement and, if necessary, a proposed briefing schedule on the motion to dismiss if that's what's filed on the 12th.

Alternatively, we could set the joint status report for August 12th, and at that point, you could tell me whether you intend -- and I can just stay the deadline to answer or otherwise respond, and then I can reset that deadline once I

review the August 12th report. I could see structuring it either way.

MR. PERRONG: From the plaintiff's perspective, I feel like the latter proposal makes a little more sense, but --

MR. ROMAN: I think we would be comfortable with that as well, Your Honor.

THE COURT: Okay.

All right. So I'm going to go with that. So amended complaint is due at that same date of July 22nd, and then I'm going to stay the deadline to answer or otherwise respond to the amended complaint until further court order, and I'll set a joint status report for August 12th in which the parties should please report on settlement.

And also if you've exhausted settlement possibilities, then please propose a deadline to answer or otherwise respond to the complaint and, if necessary, if defendant anticipates another motion to dismiss, propose a briefing schedule. And then I can review that August 12th report and set the schedule as necessary.

MR. ROMAN: Thank you, Your Honor.

THE COURT: Okay. Is there anything else that we should discuss with respect to this motion? Or I'm sorry, this --

MR. ROMAN: No, Your Honor.

THE COURT: -- this defendant?

MR. PERRONG: No, Your Honor.

May we be excused? That completes our business with the Court.

THE COURT: Oh.

MR. ROMAN: Nothing further from defendant, Your Honor.

THE COURT: Yes. I also saw that there is another pending motion with respect to the entry of default against Sandra Johnson, and so I did order some time ago for Ms. Johnson to show cause by June 4th as to why default should not be entered.

I did not see any response from Ms. Johnson. Let me just ask plaintiff whether you have heard from Ms. Johnson at all?

MR. PERRONG: No, we have not. And obviously when we file the amended complaint, that would I suppose reset her time. So if in the event that there is nothing that we hear from her then -- and to the extent that defendant, you know, doesn't -- that the amended complaint isn't dismissed, then we intend to move forward with the default process against Ms. Johnson.

THE COURT: Okay. I think though that -- it's a fair point that the amended complaint would reset her time to respond. So I think in light of the dismissal of the current operative complaint, I'll deny the motion for entry of default

against Ms. Johnson. That's Docket 37. But it's obviously without prejudice to renewal should she not respond to the amended complaint.

Okay. Anything else we should discuss?

MR. PERRONG: Not from plaintiff.

MR. ROMAN: Nothing.

THE COURT: All right. Thank you both very much for your time and for the arguments. I really appreciate it.

MR. PERRONG: Thank you.

MR. ROMAN: Thank you, Your Honor.

THE COURT: Take care. Bye.

(Concluded at 11:05 a.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Kathleen M. Fennell* — *August 20, 2026*
Kathleen M. Fennell — Date
Official Court Reporter