**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KELLY BLAND, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAS HEALTH CARE/RX PLAN AGENCY, INC. D/B/A ALLSTATE HEALTH SOLUTIONS and SANDRA JOHNSON,<br><br>Defendants. | Case No.: 1:25-cv-14183<br>Hon. Martha M. Pacold |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT AMERICAS HEALTH CARE/RX PLAN AGENCY, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

At the July 8 hearing, this Court identified the precise gap in Plaintiff's prior pleading. It was "not apparent from the facts alleged whether the caller brought up the alternative health insurance plan on her own or whether plaintiff voluntarily initiated the discussion about other health insurance plans." ECF No. 46-1 at 31[1]:10-13. The Court therefore granted leave for Plaintiff to plead facts about "how the conversation turned from the initial information about free healthcare to defendant's healthcare plans." *Id.* at 32:12-17. The Second Amended Complaint ("SAC") does exactly that. It alleges that Plaintiff never asked about paid plans on any call, that Johnson's sales agent "Victoria," not Plaintiff, told Plaintiff she "wouldn't qualify for any zero dollar plans" and asked, "Are you prepared to pay a monthly premium today for a plan?"; that no "free" marketplace enrollment was even available in June 2024 *for any of the calls*, and that Victoria then quoted and enrolled Plaintiff in a paid Allstate policy, after which Allstate itself emailed her an Allstate-branded enrollment link naming Johnson as her agent and charged her credit card $405.29. ECF No. 41 ¶¶ 42-61.[2]

Allstate's renewed motion largely ignores those allegations. It argues that the June 7 and June 10 calls cannot be traced to it, that every call but one was an informational call under *Hulce*, that the one remaining call cannot support a claim, and that it is neither directly nor vicariously liable in any event. Each argument fails. The calls share a common script, common spoofed caller IDs, and a common goal: sale of an Allstate policy. The SAC now pleads, with the words of Allstate's own agent, that the "free" offer was a pretext. The government does not spoof caller IDs, and it does not use commissioned call centers to sell its services. Allstate's agents do. And

---

[1] Unless otherwise indicated, this Brief uses ECF page numbers.

[2] Consistent with the Court's prior ruling and the Second Amended Complaint, Plaintiff refers to Defendant Americas Health Care/RX Plan Agency, Inc. d/b/a Allstate Health Solutions as "Allstate." Defendant Johnson has not appeared and does not join the Motion.

the SAC pleads actual authority, apparent authority, and ratification with facts, including Allstate's own branded email and charge and its continued retention of Johnson after two complaints. The Motion should be denied.

## II. Background

Plaintiff's residential number has been on the National Do Not Call Registry for years, and on Allstate's internal do not call list since Allstate confirmed as much in May 2021. ECF No. 41 ¶¶ 21-25, 63. In June 2024, she received at least six calls. *Id.* ¶ 26. On June 7, the caller told her she was "eligible for state affordable care act at no cost." *Id.* ¶¶ 27-28. On June 10, a caller told her that "the government is giving affordable healthcare to the people at zero cost," and two more callers that day offered purportedly "free" health insurance using practically identical scripts. *Id.* ¶¶ 31-36. On each of those calls, Plaintiff asked for no quotes, did not make inquiry as to paid plans, said she was not interested, and asked that the calls stop. *Id.* ¶¶ 29-30, 33-34, 37-38. All of the caller IDs were spoofed. *Id.* ¶ 40.

On June 24, Plaintiff was called again with a "nearly identical script pitching free health insurance," and spoke to Allstate Agent Johnson's sales agent "Victoria." *Id.* ¶ 41. When the line disconnected, Victoria "called immediately back from a different caller ID," asked Plaintiff's income, county, and date of birth, and then, unprompted, told Plaintiff that she "wouldn't qualify for any zero dollar plans" and asked whether she was "prepared to pay a monthly premium today for a plan." *Id.* ¶¶ 42-44. Victoria then quoted an Allstate Health Solutions policy and checked with her "manager," alleged to be Johnson, the licensed Allstate agent. *Id.* ¶¶ 45, 48-49. Within the hour, Plaintiff received an email containing an Allstate-branded link to obtain a PIN and complete enrollment, identifying Johnson as her agent and directing Plaintiff to contact Johnson with questions. Allstate then charged Plaintiff's credit card a $405.29 premium. *Id.* ¶¶ 57-61. The marketplace enrollment period for any free plan had closed on January 16, 2024, so none of the

June 2024 calls could have enrolled Plaintiff in free coverage. *Id.* ¶¶ 53-54. A public records search revealed no government employment for Johnson, and her only life and health appointments are with Allstate's companies. *Id.* ¶ 55. Despite two complaints, Allstate has not terminated or disciplined her. *Id.* ¶¶ 65, 79.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. A complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Rules demand only a "short and plain statement" of the claim, in order to give defendant fair notice of what the claim is and the grounds upon which it rests, not detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up). The Court must accept all well-pled factual allegations as true, and a complaint may be dismissed only where there are not "enough facts to state a claim to relief that is plausible on its face," not merely because the defendant proffers some contrary facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allstate's Rule 12(b)(1) challenge is facial, so the Court likewise accepts all "well-pleaded factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)).

## IV. ARGUMENT

### *A. The SAC plausibly ties every call to the same Allstate sales campaign, so Plaintiff has standing as to all of them.*

Allstate's standing argument is its liability argument in jurisdictional dress. It says the June 7 and June 10 calls came from "unknown numbers" and that Plaintiff "never alleges who

placed those calls." ECF No. 46 at 6. But the SAC does allege who placed them: salespersons hired by Johnson, an Allstate agent, to sell Allstate insurance, identified through "the common indicia of the calls, shared scripting, and use of 'spoofed' caller IDs." ECF No. 41 ¶¶ 50-51. Allstate itself concedes the shared script language, describing Plaintiff as having received calls "from various phone numbers that all began by stating" the same "no cost" pitch. ECF No. 46 at 3. Each call opened with a materially identical "free" health insurance script, each came from a spoofed caller ID, all came within seventeen days, and the one Plaintiff followed through on ended in an Allstate enrollment email naming Johnson and a charge from Allstate. ECF No. 41 ¶¶ 28, 32, 36, 40-41, 57-61.

That is more than enough to connect the calls to each other, and the corresponding inference that the offer of "free" insurance was merely pretextual, at the pleading stage. *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) ("The content and timing of the fourth call allows the court to draw a reasonable inference that [the telemarketer] made the first three calls to market [the defendant]'s services."); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *4 (D.N.J. Jan. 11, 2023); *Bird v. Pro Star Builders, Inc.*, No. 2:22-cv-03610, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022). As another court in this District put it, "[t]he issue of who made the first call isn't much of a whodunit." *Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022). The only reason the numbers themselves do not lead back to Allstate is that they were spoofed. ECF No. 41 ¶ 40. Rewarding that concealment "would effectively immunize savvier TCPA violators from liability—i.e., those with the wherewithal and means to use middlemen." *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363, 2024 U.S. Dist. LEXIS 93370, at *35 (W.D. Tex. May

23, 2024). And Allstate's position simply begs the question, "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013).

Nor does *Cordoba* help Allstate. By Allstate's own description, the recipients there lacked standing because "no plausible causal chain connected their injuries to the defendant's challenged conduct." ECF No. 46 at 6 (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271-72 (11th Cir. 2019)). Here, the causal chain is pleaded link by link. Allstate appointed Johnson, authorized her to hire callers to promote its products, and those callers called Plaintiff to sell Allstate policies, all while Allstate failed to honor the internal do not call request it had confirmed in 2021 or to communicate that request to its agents. ECF No. 41 ¶¶ 6, 63, 72-74, 98. Plaintiff's injury is traceable to Allstate's own conduct. Whether Allstate is ultimately liable for those calls is a merits question addressed below, not a jurisdictional one.

*B. The SAC cures the defect the Court identified by showing they were telephone solicitations.*

In *Hulce*, the Seventh Circuit held that a telephone solicitation requires that the call be "initiated with the purpose of persuading or urging someone to pay for property, goods, or services." ECF No. 46-1 at 29:18-21 (citing *Hulce v. Zipongo Inc.*, 132 F.4th 493, 500 (7th Cir. 2025)); *see Hulce*, 132 F.4th at 498-99. Whether a call meets that definition depends on its purpose, a fact-intensive inquiry that involves a measure of common sense. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). The Court previously held that Plaintiff had not pleaded enough to infer that purpose, because it was unclear from the pleadings who steered the conversation in the last call toward a paid plan. ECF No. 46-1 at 31:3-24. The SAC answers that question and more.

1. <u>The June 24 calls.</u>

The SAC now makes clear that Plaintiff never asked for quotes on paid plans or about any other insurance options on <u>*any*</u> of the calls, and that Victoria, "not Plaintiff, . . . broached the

subject of a paid plan." ECF No. 41 ¶¶ 42, 44. It quotes Victoria verbatim, telling Plaintiff that she "wouldn't qualify for any zero dollar plans through the marketplace," pleads that the marketplace was not even offering free plans during that time, and pleads that she asked whether Plaintiff was "prepared to pay a monthly premium today for a plan." *Id.* ¶¶ 43, 47, 53. It then alleges that Victoria quoted an Allstate policy only after Plaintiff answered that she was willing to pay "at the Defendant's prompting," and that Plaintiff was enrolled and charged. *Id.* ¶¶ 45, 57-61. That forecloses the alternative the Court posed at argument, in which the caller was "calling to tell everybody about free government health insurance and then the plaintiff requested information about defendant's other plans." ECF No. 46-1 at 17:21-24. The SAC pleads the opposite. A caller who opens with an offer of "free" coverage during a time when no such coverage is available, declares on her own initiative that no free coverage is available, and then asks whether the listener is prepared to pay a premium "today" is "persuading or urging someone to pay." Nothing in *Hulce* suggests otherwise.

Allstate's response is to split one conversation into two. It says the "first" June 24 call contained only the free script, and that the paid pitch came only on the "second." ECF No. 46 at 7-9. But the SAC alleges that the first call disconnected "a short time into the call," and that Victoria "called immediately back from a different caller ID and apologized that the line was disconnected" before continuing the same conversation. ECF No. 41 ¶ 43. The purpose with which the first call was initiated is revealed by what the same caller did minutes later in the same conversation. And the SAC pleads the purpose of the whole campaign directly: the "free" statements were "the common opening script of a lead generation campaign designed to identify interested recipients and transition them to agents who would direct the pitch toward selling paid commercial insurance." *Id.* ¶ 47. Victoria's words and the charge make that allegation plausible.

2. The June 7 and June 10 calls.

Allstate says the SAC adds nothing about the earlier calls. ECF No. 46 at 7. Not so. The SAC now alleges that Plaintiff asked about no paid plans on any of them, ECF No. 41 ¶¶ 30, 34, 37, that they shared the same opening script and spoofed caller IDs as the June 24 calls and came from the same Johnson-run operation, *id.* ¶¶ 47, 50-51, and, critically, that the *marketplace enrollment period for any free plan had closed on January 16, 2024*, so that "none of the June 2024 calls Plaintiff received purportedly pitching 'free' insurance could have resulted in the promotion of 'free' insurance at all." *Id.* ¶¶ 53-54. The Court's prior conclusion rested on the premise that the earlier calls "only contained information about free services available." ECF No. 46-1 at 30:24-31:2. The SAC affirmatively pleads that *no free services were available*, and that the *only* product the callers could deliver was a paid health insurance policy. ECF No. 41 ¶¶ 54-56. That changes the inference. As in *Toney*, the content and timing of the later call permit a reasonable inference about the purpose of the earlier ones. 75 F. Supp. 3d at 746. After all, "[t]he relevant question is a Defendant's purpose in initiating the calls, not what occurred on each call." *Harrison v. Humana, Inc.*, No. 3:24-CV-00262-GNS, 2024 WL 4828737, at *5 (W.D. Ky. Nov. 19, 2024) (cleaned up).

The Court asked the right question at the last hearing: "why would Allstate advertise government plans?" ECF No. 46-1 at 24:13-14. Allstate's only answer was speculation that its agents "probably receive some financial remuneration" for no-cost enrollments. *Id.* at 24:16-19. That speculation is found nowhere in the SAC, and the SAC now forecloses it, because it pleads that no-cost enrolment was not possible in June 2024, let alone an enrolment that would result in some sort of financial remuneration. ECF No. 41 ¶¶ 53-54. What remains is the obvious. The callers were not the government and merely used "free" government insurance as buzzwords. The government does not spoof caller IDs. It does not hire call centers staffed by commissioned

sales agents to cold call numbers on the Do Not Call Registry, and state marketplaces do not make such calls at all. "[I]ndividual insurance agents, like Johnson, who sell commercial company policies, like Allstate's, do." *Id.* ¶¶ 40, 55-56. A search of public records revealed no government employment for Johnson, and her only life and health appointments are with Allstate. *Id.* ¶ 55. The reasonable inference, which the Court must draw in Plaintiff's favor, is that "free" was bait to get callers interested and imbue the calls with an air of legitimacy.

That makes this case the opposite of *Hulce*, where the record *at summary judgment* showed the calls were made to advertise genuinely free services that were, in reality, already available through the plaintiff's existing health plan, and which also would have resulted in gift card incentives paid to the plaintiff. 132 F.4th at 496-97. Courts consistently recognize that "services that appear to be free . . . may 'serve as a mere pretext for commercial services.'" *Rockwell v. Medicus Healthcare Sols., LLC*, No. 24-CV-128-LJV, 2025 WL 959745, at *4 (W.D.N.Y. Mar. 31, 2025) (quoting *Suescum v. Fam. First Life, LLC*, No. 6:21-CV-1769-WWB-EJK, 2023 WL 311144, at *2 (M.D. Fla. Jan. 19, 2023)); *see also Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 209 (S.D.N.Y. 2024); *Newell v. Children's Dental Health Assocs., LLC*, No. 25-5238, 2026 WL 927378, at *8-*9 (E.D. Pa. Apr. 6, 2026) (distinguishing *Hulce* where nothing indicated the promoted services would be free). A contrary rule would let every telemarketer open with something "free" and escape the TCPA no matter what it ultimately sold. The SAC plausibly alleges that every call was a telephone solicitation.

*C. Plaintiff received far more than one call.*

Allstate's single-call argument depends entirely on eliminating every other call, and fails for the reasons above. ECF No. 41 ¶ 26. But even on Allstate's own terms, the June 24 calls are two calls, not one. Allstate says Victoria called back "presumably using the same number." ECF

No. 46 at 8. The SAC alleges the opposite: Victoria called back "from a different caller ID." ECF No. 41 ¶ 43. That is a second call, initiated by the caller, which is all § 227(c)(5) requires.

Allstate's consent theory is no better. Answering a ringing telephone is not consent to the call that is already ringing. Plaintiff had told the callers to stop four times, had been on Allstate's own internal do not call list since 2021, and pleads that she never consented. ECF No. 41 ¶¶ 29, 33, 38, 63, 91-92, 95. Whatever *Bradford* says about the form consent must take, ECF No. 46 at 8, it does not hold that a consumer consents to a telemarketing call by picking up the phone. And whether Plaintiff consented is, at most, a factual dispute that cannot be resolved against her on a motion to dismiss. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002).

Nor does it matter that Plaintiff played along or is, in Allstate's words, a "serial TCPA litigant." ECF No. 46 at 8. "The fact that he 'play[s] along' with telemarketing scripts to 'find out who [they] really are' is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation." *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019). That is exactly what happened here, and it is exactly the kind of fact the Court said was missing last time. Nor did Plaintiff "manufacture standing" under *Clapper*. ECF No. 46 at 15. Her injury is the unwanted calls, not the purchase. ECF No. 41 ¶¶ 99, 105. The charge is simply proof of what the calls were for. And the purported refund Allstate attaches is not referenced anywhere in the SAC and cannot be considered on this motion; even if it could, it confirms that Allstate took Plaintiff's money.

*D. Allstate is liable for the calls made on its behalf.*

Allstate argues that it did not physically dial the calls. ECF No. 46 at 9-10. That is beside the point. The SAC alleges that the calls were placed by Johnson and the salespeople she hired to sell Allstate's policies. ECF No. 41 ¶¶ 3, 50-51, 70. Section 227(c)(5) reaches calls made "by or

on behalf of" an entity, language that "explicitly extends vicarious liability to violations under that subsection." *Katz v. Allied First Bank, SB*, No. 22 C 5277, 2026 WL 636723, at *7 (N.D. Ill. Mar. 6, 2026); *see Moore v. Club Exploria, LLC*, No. 1:19-CV-02504, 2025 WL 2755076, at *10 (N.D. Ill. Sept. 26, 2025). As the FCC has explained, "allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions." *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013).

Under federal common law agency principles, actual authority, apparent authority, and ratification each supply "an independent basis for . . . vicarious liability," and Plaintiff need plead only one. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021). Agency is "ultimately a question of fact." *Id.* at 588. "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency," *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016), and need not allege facts about the defendant's instructions or control that are "exclusively within the Defendants' custody and control." *Id.* at 997. A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1059 (D. Colo. 2023). The SAC pleads all three theories.

1. Actual authority.

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01. Actual authority "does not require the principal to specify the singular acts for which [its] authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *John v. Keller Williams Realty, Inc.*, No.

619CV1347ORL40DCI, 2020 WL 10502631, at *2 (M.D. Fla. Feb. 4, 2020). In a telemarketing case, this court explained that the principal's "authorization to [its agents] to sell [its] programming and [its] authority to control the marketing of [that] programming by [those agents] are the relevant questions," and "[a]n independent company . . . can be an agent with respect to work performed for a principal." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017).

The SAC does so. Allstate appointed Johnson to write its life and health policies under a contract with an Illinois choice-of-law and forum provision. ECF No. 41 ¶¶ 6, 8, 55. Allstate uses agents it authorizes to call potential customers, vet them, and sell them Allstate insurance. *Id.* ¶ 72. It authorized Johnson to hire middlemen like Victoria to place the calls through which its products were promoted, and to use its brand name in sales communications. *Id.* ¶¶ 74-75. That answers Allstate's own authority, which holds that an agent may appoint a subagent with "actual or apparent authority from the principal." ECF No. 46 at 11 (citing *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 832 (N.D. Ill. 2016)); *Katz*, 2026 WL 636723 at *9-*10. And the SAC pleads facts making that authority plausible: within the hour after Victoria's call, Plaintiff received an Allstate-branded enrollment email, identifying Johnson as her agent, and Allstate charged her card. ECF No. 41 ¶¶ 57-61. Allstate processed the very sale that Johnson's caller made. Courts routinely find actual authority plausibly alleged on less. *See Landy v. Nat. Power Sources, LLC*, No. 321CV00425PGSTJB, 2022 WL 797967, at *3 (D.N.J. Mar. 16, 2022) ("smooth transfer" to defendant's agents, followed by defendant "accepting the call, and following up with an e-mail after the call"); *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) (call connected to Allstate subsidiary's sales representative).

Allstate's authorities are not to the contrary. In *Smith v. State Farm*, by Allstate's account, the plaintiff did not allege that State Farm engaged the subagent or had any authority over it. ECF No. 46 at 12. Here, the SAC alleges that Allstate authorized the hiring, and the call led directly to Allstate's own enrollment email and charge. And unlike *Bennett*, where the plaintiff relied on "one-sided namedropping" and never "interacted with Celtic at all, let alone immediately after connecting with the telemarketer," *Bennett v. Celtic Ins. Co.*, No. 20-CV-06172, 2022 WL 865837, at *4 (N.D. Ill. Mar. 23, 2022), Plaintiff interacted with Allstate itself the same afternoon and received a *credit card charge from Allstate*. As in *Vessal*, "the existence of an agency relationship is usually a factual question and any evidence of an agency relationship . . . is entirely within [the defendant's] control." *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at *3 (N.D. Ill. Oct. 18, 2017).

2. Apparent authority.

Apparent authority arises from the principal's manifestations to a third party that supply a reasonable basis to believe the principal authorized the agent's acts. RESTATEMENT (THIRD) OF AGENCY § 2.03. The FCC's illustrative indicia include the seller's grant of "access to information and systems that normally would be within the seller's exclusive control" and "[t]he authority to use the seller's trade name, trademark and service mark." *DISH Network*, 28 FCC Rcd. at 6592 (cleaned up). Once pleaded, such evidence "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

Allstate insists that apparent authority must derive from the principal's own manifestations, and that it never communicated with Plaintiff. ECF No. 46 at 13. But it did. Allstate itself, under its "Allstate Health Solutions" name, provided Plaintiff the enrollment link, told her that Johnson was her agent, and directed her to contact Johnson with any questions. ECF

No. 41 ¶¶ 59-61, 71. Allstate then charged her card directly. *Id.* ¶ 57. Those are manifestations by the principal, to the Plaintiff, that Johnson and those working through her were authorized to sell Allstate's coverage. *Hossfeld*, decided on summary judgment, is therefore inapposite. There, by Allstate's own description, Allstate never "interacted with [the plaintiff] in any way." ECF No. 46 at 14 (quoting *Hossfeld v. Allstate Ins. Co.*, 179 F.4th 1046, 1057 (7th Cir. 2026)). So too *Cunningham v. Health Plan Intermediaries*, where the telemarketers merely "mentioned Defendants' products." ECF No. 46 at 14. As courts recognize, "the smooth transfer from the initial . . . contact to a live person and then to another live person of [d]efendant shows a cooperative relationship from which one may infer authority or apparent authority." *Doyle v. GoHealth, LLC*, No. CV 22-04291, 2023 WL 11900257, at *3 (D.N.J. Dec. 7, 2023) (quoting *Landy*) (cleaned up).

3. <u>Ratification.</u>

Ratification "is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." RESTATEMENT (THIRD) OF AGENCY § 4.01(1). "A principal can ratify his agent's actions either by not repudiating them or by accepting their benefit." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 677 (7th Cir. 2004). A principal may also ratify where it is willfully ignorant, that is, where it had knowledge of facts that would have led a reasonable person to investigate further but ratified without doing so. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019); *see Aranda*, 179 F. Supp. 3d at 831-33.

The SAC pleads both routes. Allstate accepted the benefit: it accepted the lead, enrolled Plaintiff, and charged her $405.29. ECF No. 41 ¶¶ 57, 64. And Allstate has not repudiated Johnson's conduct. Despite two complaints and her default in this action, it has not terminated or disciplined her in any way. *Id.* ¶¶ 65, 78-79, 84-85. Allstate was on notice, too: it had confirmed

Plaintiff's number was on its internal list in 2021, and a reasonable seller would have investigated why its agents were calling Registry numbers to a number on its internal do not call list pitching "no cost" coverage that became a $405.29 policy. *Id.* ¶¶ 63, 80-83.

Allstate's lone rejoinder is that it refunded the premium the next day. ECF No. 46 at 15. That fact is outside the SAC. But even crediting it, refunding one premium after the consumer cancelled is not a repudiation of the agent who generated the sale, and Allstate has neither terminated nor disciplined Johnson. ECF No. 41 ¶¶ 65, 79. That is ratification by "not repudiating." *Sphere Drake*, 376 F.3d at 677. *Toney* and *Hossfeld* do not hold otherwise. In *Toney*, the plaintiff failed to allege that the defendant accepted any benefit. 75 F. Supp. 3d at 745. In *Hossfeld*, as Allstate describes it, the plaintiff never obtained insurance, and it was Allstate's agent, not Allstate, who sent the quote. ECF No. 46 at 15. Here, Allstate itself sent the enrollment email and took the payment. Whether Allstate had actual knowledge or was willfully ignorant is a fact question, particularly where such information is "peculiarly within the possession and control of the defendant." *Guadian v. DebtBlue LLC*, No. EP-23-CV-329-KC, 2024 WL 5184488, at *3 (W.D. Tex. Apr. 16, 2024).

*E. Rule 9(b) does not apply, and the SAC would satisfy it anyway.*

Allstate again invokes Rule 9(b), an argument the Court did not adopt last time. ECF No. 46 at 11-12; ECF No. 46-1 at 29:2-31:24. Rule 9(b) applies when a claim "sounds in fraud," that is, when it is premised upon a course of fraudulent conduct. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Plaintiff's TCPA claims are not. Falsity and reliance are not elements of a § 227(c)(5) claim, and, as the Plaintiff has explained, the allegation that "free" was a pretext is simply one factual reason the Court can infer the calls' purpose. That statement can still be a pretext, and can satisfy the Plaintiff's pleading burden, without transforming it into an allegation of fraud.

And even if Rule 9(b) applied, as the Plaintiff has explained, the SAC pleads the who, what, when, where, and how in more detail than her original Complaint. It pleads the dates, the caller IDs, the scripts, even more of Victoria's own words, Johnson's role, the Allstate email, and the $405.29 charge. ECF No. 41 ¶¶ 27-61. Allstate's footnoted suggestion that Plaintiff might have qualified for special enrollment, ECF No. 46 at 12 n.1, relies on a website outside the pleadings and is contradicted by the SAC, which alleges that Allstate's own agent told Plaintiff she "wouldn't qualify for any zero dollar plans" because none were available at the time. ECF No. 41 ¶ 43. At most, that is a factual dispute for discovery.

## V. CONCLUSION

The SAC pleads exactly what the Court said was missing. It pleads how the conversation turned from "free" healthcare to a paid Allstate policy, pleads facts showing that "free" healthcare was not available during any of the calls, and pleads that it was Allstate's agent, not Plaintiff, who turned the conversation into a sales pitch for paid plan. It ties every call to the same campaign and pleads Allstate's liability under each theory of agency. Allstate's Motion should be denied in its entirety. Should the Court find any aspect of the SAC deficient, Plaintiff respectfully requests leave to amend, as it is not "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 519-20 (7th Cir. 2015).

Dated: September 25, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case. I also certify that I mailed the foregoing to: Sandra Johnson, 7755 Tropicana St., Miramar, FL 33023; and Sandra Johnson, 3805 SW 148th Ter, Miramar, FL 33027.

September 25, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com