**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| KELLY BLAND, on behalf of herself and others similarly situated, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 25-cv-14183 |
| | : | Hon. Martha Pacold |
| AMERICAS HEALTH CARE/RX PLAN AGENCY, INC. D/B/A ALLSTATE HEALTH SOLUTIONS | : | |
| AND | : | |
| SANDRA JOHNSON, | : | |
| Defendants. | : | |

**DEFENDANT AMERICAS HEALTH CARE/RX PLAN AGENCY, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff's Response confirms that the Second Amended Complaint ("SAC") should not survive dismissal. In her Response, Plaintiff took the position that the June 24 calls are two calls, not one. (Dkt. 47, p. 8). However, under *Hulce v. Zipongo Inc.*, 132 F.4th 493, 500 (7th Cir. 2025), the first June 24 call is, at most, a non-solicitation which is not subject to liability under the TCPA. This Court has already held as to materially identical allegations that calls offering only free services, "like those in *Hulce*," do "not support a finding that defendant intended to encourage plaintiff to pay for anything because they only contained information about free services available." (Dkt. 46-1, Ex. A ("Tr.") at 29:17–30:2). The June 7 and June 10 calls, and the first June 24 call, use free-insurance scripts. (Dkt. 41, ¶¶ 28, 32, 36, 41, 47). Nothing in the SAC or the Response alters that conclusion.

Despite Plaintiff's attempt to manufacture a plausible allegation that there was an intent to solicit, Plaintiff's new alleged quotes from the alleged call identified only as "Victoria" prove the opposite. Victoria's quoted words describe an income-based eligibility determination, not the nonexistence of free plans, and nothing in the SAC attributes more than one call to Americas Health under any agency theory as required to reach the multi-call threshold of 47 U.S.C. § 227(c)(5).

This is Plaintiff's third complaint. She remains unable to address the deficiencies identified by this Court at the July 8, 2026 hearing and, as a result, the SAC should be dismissed in its entirety with prejudice.

## <u>ARGUMENT</u>

### I. The SAC Fails to State a TCPA Claim.

The Court accepts well-pleaded factual allegations as true, but not legal conclusions, "[t]hreadbare recitals," or unwarranted inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Measured against that standard, Plaintiff's

SAC cannot stand.

**A. The June 24 Contact Yields at Most One Solicitation.**

Section 227(c)(5) provides a private right of action only to a person who has received "more than one ***telephone call*** within any 12-month period by or on behalf of the same entity" in violation of the do-not-call regulations. 47 U.S.C. § 227(c)(5).

A telephone solicitation is a call "***initiated*** with the purpose of persuading or urging someone to pay for property, goods, or services." *Hulce*, 132 F.4th at 500 (emphasis added). The inquiry focuses on the purpose for which the call was ***initiated***. *Id.* Plaintiff cannot borrow the content of a later, separately initiated call to recharacterize an earlier one—yet that is precisely what she does in arguing that the first call's purpose "is revealed by what the same caller did minutes later." (Dkt. 47, p. 7).

Judged by its own content, the first June 24 call used "a nearly identical script pitching free health insurance" (Dkt. 41, ¶¶ 41, 47)—the same script the Court already held insufficient. Only the second call contained any alleged request for payment (Dkt. 46 at 8), and the Response identifies none in the first. Plaintiff's out-of-circuit authorities do not change the result: *Harrison v. Humana, Inc.*, 2024 WL 4828737 (W.D. Ky. Nov. 19, 2024), *Rockwell v. Medicus Healthcare Solutions, LLC*, 2025 WL 959745 (W.D.N.Y. Mar. 31, 2025), and *Newell v. Children's Dental Health Associates, LLC*, 2026 WL 927378 (E.D. Pa. Apr. 6, 2026), do not apply *Hulce*, and *Landy v. Natural Power Sources, LLC*, 2022 WL 797967 (D.N.J. Mar. 16, 2022), and *Doyle v. GoHealth, LLC*, 2023 WL 11900257 (D.N.J. Dec. 7, 2023), involved a live transfer within a single call. Here, Plaintiff pleads a disconnection followed by a new call from a different number. (Dkt. 41, ¶ 43). The SAC pleads, at most, one solicitation on June 24.

However, this is insufficient under 47 U.S.C. § 227(c)(5), as that leaves the June 7 and June 10 calls, which contained only free-insurance scripts. (Dkt. 41, ¶¶ 29, 33). This Court has

already held that such calls, "like those in *Hulce*," do "not support a finding that defendant intended to encourage plaintiff to pay for anything." (Tr. 29:17–30:2); *see Hulce*, 132 F.4th at 500. Calls that are not telephone solicitations do not count toward the statutory threshold, and one solicitation is not "more than one." *Charvat v. GVN Michigan, Inc.*, 531 F. Supp. 2d 922, 926 (S.D. Ohio 2008).

### B. The "Victoria" Quote Describes an Individualized, Income-Based Eligibility Determination, Not the Absence of Free Plans.

Plaintiff's main attempt to avoid the Court's prior ruling is her new allegation that, because open enrollment ended January 16, 2024, "none of the June 2024 calls . . . could have resulted in the promotion *of* 'free' insurance at all," and that the caller–"Victoria"—"admitted" that "only paid insurance plans were available." (Dkt. 41, ¶¶ 53-54; Dkt. 47, p. 8). Paragraph 53 alleges only the dates of open enrollment; Paragraph 54's "admission" is Plaintiff's inference from those dates, not a well-pleaded fact. *Iqbal*, 556 U.S. at 678-79. The words Plaintiff actually pleads say something different.

According to the SAC, Victoria first asked Plaintiff for her annual income, confirmed that she was seeking an individual plan, and confirmed her county and date of birth. (Dkt. 41, ¶ 43). Only then did Victoria state: "[W]e are outside of the enrollment period . . . so plans are based on availability. They are also based on a lot of factors, like your location, your date of birth, as well as your income. Because of the income threshold that you're in, you wouldn't qualify for any zero dollar plans through the marketplace, so if you are looking for an insurance plan, you would be required to pay a monthly premium. Are you prepared to pay a monthly premium today for a plan?" (*Id.*).

Three features of that quotation defeat Plaintiff's characterization. *First*, the stated reason Plaintiff would not qualify was "the income threshold that you're in"—her own income, not the

nonexistence of free plans. *Second*, the screening questions about income, plan type, county, and date of birth preceded the answer, consistent with a genuine eligibility inquiry, not a pretext. *Third*, plans "based on availability" describes limited availability, not zero availability, and is consistent with special enrollment opportunities outside open enrollment. (*See* Dkt. 41, ¶ 53; Dkt. 46, p. 11 n.1). A statement that this Plaintiff did not qualify because of her income assumes that others might.

Americas Health does not ask the Court to resolve a factual dispute. Rather, the words Plaintiff chose to plead after receiving leave to amend do not support the inference she asks the Court to draw, and where a pleaded quotation contradicts the pleader's characterization of it, the quotation controls. *See Iqbal*, 556 U.S. at 678-79.

Even accepting Plaintiff's characterization, it would not matter. At most, the SAC alleges the callers were mistaken about her eligibility, and a mistaken offer of free services is still not a request to pay for them. Because the *Hulce* test looks to what a call asked of the recipient when it was initiated, it does not turn on what products happened to be available in the market or on whether the caller might earn a commission from a no-cost enrollment. 132 F.4th at 500. Plaintiff's argument is one that the Court already rejected: "The Seventh Circuit rejected plaintiff's argument that the fact that a call may make a party more likely to use defendant's services in the future automatically makes the call a telephone solicitation." (Tr. 30:16-19).

At the July 8 hearing, the Court observed that it was unclear who brought up the alternative plan and granted leave for Plaintiff to plead how the conversation turned. (Tr. 31:10-13; 32:12-17). The SAC's answer is that Victoria determined Plaintiff's income disqualified her from a zero-dollar plan and then asked whether she was prepared to pay a monthly premium; Plaintiff said she was, and Victoria quoted a policy. (Dkt. 41, ¶¶ 43, 45). That sequence describes a pivot after an

individualized eligibility determination, not a call initiated for the purpose of selling a paid plan. Under *Hulce* this is insufficient. *Hulce*, 132 F.4th at 500.

Similarly, in *Williams v. National Healthcare Review*, Case No. 2:15-cv-0054, 2017 WL 4819097 (D. Nev.), the district court held, albeit on a motion for summary judgment, that a call made for the purpose of ascertaining whether a hospital patient had private insurance to cover the costs of her medical procedure or would be willing to sign up for Medicaid ***was not*** a solicitation covered by the TCPA. *Id*. at *3 (providing a transcript of the purported call); *id*. at *7 ("The Court finds that the calls at issue here, seeking to encourage enrollment in a government program that provides free or heavily subsidized healthcare does not constitute encouragement of a 'purchase,' 'rental,' or 'investment' of a 'good, or service[ ].' Medicaid is generally provided to those otherwise unable to afford insurance, at little to no cost, and is not "purchased" under the plain meaning of that word."). This is substantially similar to the calls at issue here and warrants dismissal of the action.

## II. No Call Is Attributable to Americas Health.

### A. The SAC Pleads No Facts Tying the June 7 and June 10 Calls to Americas Health.

The June 7 and June 10 calls came from two unidentified numbers, (352) 657-3584 and (914) 786-7030. (Dkt. 41, ¶¶ 27, 31). The SAC never alleges who placed them, that either number belongs to Americas Health, that Americas Health was mentioned, or that anyone placed them on its behalf. (*Id.*, ¶¶ 27-28, 31-32). Plaintiff relies instead on allegations "upon information and belief" about "common indicia" and spoofed caller IDs (*Id.*, ¶¶ 40, 50-51), which say nothing about what Americas Health communicated to anyone.

*Toney v. Quality Resources*, *Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014), does not help Plaintiff. There, three unanswered calls came from the vendor's known number, and a fourth call

from that same number solicited the vendor's membership; the "content and timing of the fourth call" supported an inference that the vendor made the first three. *Id*. Here, nothing ties the June 7 and June 10 calls to Americas Health or to Victoria. Without those calls, any agency theory reaches at most the single June 24 call on which Victoria discussed a paid plan—and one call does not state a claim under either count. 47 U.S.C. § 227(c)(5); *Charvat*, 531 F. Supp. 2d at 926.

### B. Plaintiff Has Not Pleaded Actual Authority, Including Authority to Appoint Sub-Agents.

Nor does the SAC plead actual authority for the June 24 call. Actual authority depends on the principal's manifestations to the agent: the agent must reasonably believe, "at the time of taking action," that the principal wants the agent to act that way. Restatement (Third) of Agency § 2.01. The principal must also control or have the right to control the agent's conduct. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021). And because Victoria was allegedly Johnson's hire, Plaintiff must plead that Americas Health gave Johnson authority to appoint sub-agents. *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 832 (N.D. Ill. 2016); Restatement (Third) of Agency § 3.15(2).

The SAC's only allegation on that point is that Americas Health "authorized Johnson to hire middlemen, like 'Victoria.'" (Dkt. 41, ¶ 74). That is a legal conclusion. *Iqbal*, 556 U.S. at 678-79. The SAC alleges no contract term, instruction, script, or other communication from Americas Health to Johnson about hiring callers, and no control over Victoria, who never said she was calling for Americas Health. (Dkt. 46 at 12-13). Courts in this District reject sub-agency theories pleaded on such a thin basis. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5346430, at *3-4 (N.D. Ill. Sept. 23, 2013); *Warciak v. Subway Rests., Inc.*, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020); *Bennett v. Celtic Ins. Co.*, 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022). *Bilek* is not to the contrary: the complaint there alleged that the principal

authorized the lead generators to use its approved scripts, trade name, and proprietary information. 8 F.4th at 587. Here, every caller used generic scripts about government plans, and none used Americas Health's name or proprietary information. (Dkt. 41, ¶¶ 27–43).

The post-call enrollment email and charge do not fill the gap. (Dkt. 41, ¶¶ 57-61). An insurer that later processes an application has not, by doing so, told an agent's sub-agent to place a call. Plaintiff's authorities involved a transfer to, or a call connected with, the defendant's own representatives (Dkt. 47, p. 12); here, Plaintiff pleads a disconnection followed by a new call from a different number, made by an alleged sub-agent of an independent agent. (Dkt. 41, ¶ 43).

### C. Apparent Authority Fails Under *Hossfeld* Because Americas Health's Only Alleged "Manifestations" Post-Date the Calls.

Plaintiff's principal response is that *Hossfeld* was decided on summary judgment. But the substantive rule of agency law does not change with the procedural posture; at the pleading stage, the SAC must allege facts that would satisfy it. The SAC pleads no pre-call manifestation by Americas Health at all.

The Response argues three supposed manifestations by Americas Health which support apparent authority: the enrollment email, the email's identification of Johnson as the agent, and the $405.29 charge. (Dkt. 47, p. 13-14; Dkt. 41, ¶¶ 57, 59-61, 71). Each one occurred on or after June 24, 2024—after the calls had already been placed. (Dkt. 41, ¶¶ 57, 59-60). A manifestation that comes after the calls cannot have induced Plaintiff to believe, at the time of the calls, that the callers were authorized to call on Americas Health's behalf.

The Seventh Circuit's recent decision in *Hossfeld v. Allstate Insurance Co.*, 179 F.4th 1046 (7th Cir. 2026), is dispositive. There, the court rejected apparent authority because there was no evidence that "Allstate interacted with him in any way, let alone in a way that led him to reasonably believe that Allstate authorized the subagent." *Id.* at 1057. The court emphasized that the

representations at issue were made by the subagent: "Allstate never made those statements, nor did it instruct Atlantic to do so." *Id.* The same is true here. The SAC does not allege that Americas Health said anything to Plaintiff before or during any call, or that it instructed anyone to make the statements Plaintiff challenges.

Plaintiff also argues that, unlike in *Hossfeld*, "Allstate" interacted with her. But the only interactions the SAC alleges are the post-call email and charge from Americas Health's independent agent, Defendant Johnson, not with Americas Health directly. (Dkt. 41, ¶¶ 57–61). *Hossfeld* addressed exactly that circumstance, holding that "even if the act of sending a quote or email to a potential customer constituted a benefit, it was Allstate's agent, not Allstate, who sent the quote." 179 F.4th at 1057. A post-call enrollment communication cannot retroactively supply the manifestation that apparent authority requires.[1]

### D. Ratification Fails for Lack of Full Knowledge and Lack of Any Retained Benefit.

Plaintiff's ratification theory rests on two allegations: that Americas Health accepted a benefit and that it has not terminated Johnson. (Dkt. 47, p. 13-14; Dkt. 41, ¶¶ 65, 79). Neither allegation pleads that Americas Health knew that callers had ignored do-not-call requests (Dkt. 41, ¶¶ 29, 33, 38) or spoofed caller IDs. (*Id.*, ¶ 40). Declining to discipline an agent is not the same as knowing that the agent, or someone else, violated the law.

*Sphere Drake Insurance Ltd. v. American General Life Insurance Co.*, on which Plaintiff relies for the proposition that a principal may ratify "by not repudiating," does not dispense with the knowledge requirement. 376 F.3d 664, 677 (7th Cir. 2004) (ratification requires full knowledge of the facts and the choice to accept or reject the benefit). The SAC does not allege, even on

[1] Plaintiff describes *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017), as a decision of "this court." (Dkt. 47 at 12). It is not. *Dish Network* was decided by the United States District Court for the Central District of Illinois and is not binding here.

information and belief, that Americas Health knew of the alleged violations. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019), is a non-binding, out-of-circuit willful-ignorance decision, and the SAC pleads no red flags known to Americas Health. Independently, there is no ratification by acceptance of benefits where, as here, no benefit was retained. *Hossfeld*, 179 F.4th at 1057.

Plaintiff, not Americas Health, made the June 24 transaction central to this case. The SAC alleges that Plaintiff was charged $405.29 by "Allstate" on June 24, 2024, and that she received an enrollment email with a PIN link naming Johnson. (Dkt. 41, ¶¶ 57-61). Plaintiff relies on that charge as proof of the calls' purpose—"the proof that the 'free' plan was false is the charge on her credit card" (Tr. 13:10-13)—and as the "benefit" supporting her ratification theory. (Dkt. 47, p. 14).

The Court may consider a document referred to in the complaint, central to the plaintiff's claim, and authentic without converting the motion into one for summary judgment. *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 947 (N.D. Ill. 2011); (*see* Dkt. 46 at n.2). The refund is part of the same transaction record as the charge Plaintiff pleads. Plaintiff does not dispute its authenticity or that the premium was refunded the next day; she argues only that it is "not referenced anywhere in the SAC." (Dkt. 47 at 10, 15). Plaintiff cannot plead the charge as her proof while excising its reversal from the Court's view. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

Plaintiff contends that "refunding one premium after the consumer cancelled is not a repudiation." (Dkt. 47, p. 14). That misses the point: ratification by acceptance of benefits requires a retained benefit, and Americas Health retained none. *Hossfeld*, 179 F.4th at 1057; *Toney*, 75 F. Supp. 3d at 745. The refund is thus an independent ground, in addition to the lack of knowledge,

for rejecting Plaintiff's ratification theory.

### III. Absent Two Solicitation Calls on Americas Health's Behalf, Plaintiff Lacks Standing.

The same defects foreclose standing under Rule 12(b)(1). Plaintiff must plead an injury in fact fairly traceable to the defendant's own conduct, not to the independent conduct of third parties. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271-72 (11th Cir. 2019). Because the SAC does not plead two solicitation calls by or on behalf of Americas Health, it alleges no cognizable § 227(c)(5) injury traceable to it.

### IV. Alternatively, Rule 9(b) Applies to Plaintiff's "Pretext" Theory, and the SAC Does Not Satisfy It.

The Court need not reach Rule 9(b), because the SAC fails under Rule 8. But Rule 9(b) independently requires dismissal. Plaintiff argues that falsity is not an element of a § 227(c)(5) claim (Dkt. 47, p. 14), but the question is the nature of the allegations: "when a plaintiff alleges deceptive or fraudulent behavior, such allegations must meet the heightened standard of Rule 9(b)." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Plaintiff's theory is that the "free" script was a deliberate pretext to sell paid plans (Dkt. 41, ¶¶ 47, 54; Dkt. 47, p. 1), yet the SAC pleads its key links—who hired the callers, where the calls originated, and whether caller IDs were spoofed—only upon information and belief. (Dkt. 41, ¶¶ 40, 50–51).

### V. Further Leave to Amend Should Be Denied Because Amendment Would Be Futile.

Plaintiff asks, in a single closing sentence, for leave to amend a fourth time, invoking *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 519-20 (7th Cir. 2015). *Runnion* does not help her. It establishes a presumption in favor of leave after a first dismissal, not

an unlimited right to keep repleading. The ordinary rule is that a plaintiff should receive "one opportunity to try to cure the problem." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). Plaintiff has received that opportunity. At the July 8 hearing, this Court applied *Runnion*, identified the specific deficiency, and granted leave so Plaintiff could plead facts showing "how the conversation turned from the initial information about free healthcare to defendant's healthcare plans." Before granting leave, the Court asked Plaintiff's counsel directly whether there were "other facts or allegations that could get at that issue." With that guidance in hand, Plaintiff filed the SAC, which is her third complaint.

The SAC shows what more Plaintiff has to offer, and it does not cure the defect. Her only new allegation is Victoria's quoted statement, which describes an income-based eligibility determination on a call separate from the one initiated with the free-insurance script, and her agency allegations still identify no pre-call manifestation, no sub-agency authority, and no knowledge by Americas Health. The Response identifies no additional fact she could plead. Because it is now "certain from the face of the complaint that any amendment would be futile," *Runnion*, 786 F.3d at 519-20, the Court should dismiss with prejudice.

## **CONCLUSION**

For the foregoing reasons, and those set forth in its Motion, Americas Health respectfully requests that the Court dismiss both counts of the Second Amended Complaint against it with prejudice, deny Plaintiff's request for leave to amend, and grant such other and further relief as the Court deems just and proper.

Dated: October 9, 2026

Respectfully submitted,

**AKERMAN LLP**

*/s/Jani K. Mikel*
**JANI K. MIKEL**
Illinois Bar No. 6331445
71 South Wacker Drive, 47th Floor
Chicago, Illinois 60606
Telephone: (312) 634-5700
Facsimile: (312) 424-1900
Email: jani.mikel@akerman.com
Email: elida.asa@akerman.com

- and -

**RYAN ROMAN**
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
Email: ryan.roman@akerman.com
Email: lauren.chang-williams@akerman.com

*Attorneys for Defendant Americas Health Care/RX Plan Agency, Inc. d/b/a Allstate Health Solutions*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, October 9, 2026, I caused a copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/Jani K. Mikel*
Jani K. Mikel